**IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ACADIA PHARMACEUTICALS INC., <br><br> Plaintiff, <br><br> v. <br><br> AUROBINDO PHARMA LIMITED, et al. <br><br> Defendants. | C.A. No. 1:22-cv-01387-GBW <br> (Consolidated; Lead Case) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MSN LABORATORIES PRIVATE LIMITED AND MSN PHARMACEUTICAL, INC.'s *DAUBERT* MOTION REGARDING CERTAIN OPINIONS OF DR. PAMELA SMITH**

## **TABLE OF CONTENTS**

                                                                                                               **Page**

I.      INTRODUCTION ................................................................................................................ 1

II.     DR. SMITH'S TESTIMONY ON CLAIM 3 SHOULD BE EXCLUDED ......................... 1

        A.     Plaintiff fails to show Dr. Smith possesses the requisite expertise to opine as to the analysis of the particle size distribution of MSN's ANDA Product. ............ 1

        B.     Dr. Smith's Opinions are Unreliable Because They Simply Repeat Dr. Byrn's Out-of-Court Opinions and Analysis ........................................................... 2

        C.     Dr. Smith Offers No Helpful Testimony to Tie the Testing Done to the Equipment and Techniques Required in the Patent Specification. ......................... 6

III.    CONCLUSION ................................................................................................................... 6

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
  21-704-MAK, 2022 WL 3021560 (D. Del. July 29, 2022) ................................................................. 1

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
  285 F.3d 609 (7th Cir. 2002) ............................................................................................... 3, 4, 5

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) ........................................................................................ 6

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
  No. 09-80-LPS-MPT, 2013 WL 2178047 (D. Del. May 20, 2013) ............................................ 5

*Shire Viropharma Inc. v. CSL Behring LLC*,
  No. 17-414, 2021 WL 1227097 (D. Del. Mar. 31, 2021) ........................................................... 5

*United States v. DynCorp Int'l LLC*,
  No. 16-1473 (PLF), 2024 WL 604923 (D.D.C. Jan 25, 2024) ................................................... 4

**Other Authorities**

Fed. R. Ev. 801(c) ............................................................................................................................. 6

## I. INTRODUCTION

Plaintiff hardly disputes that Dr. Smith relied exclusively on the expertise of Dr. Byrn—who is not testifying at all in this case—in rendering her opinions on the laser light scattering particle size analysis of MSN's ANDA Product. Dr. Smith said that Dr. Byrn told her what he did, including the averaging of the two D90 values from the two separate runs. She did not say why, and could not offer any explanation. Because Dr. Smith is not an expert, she cannot offer useful testimony other than that she trusts Dr. Byrn.

## II. DR. SMITH'S TESTIMONY ON CLAIM 3 SHOULD BE EXCLUDED

### A. Plaintiff fails to show Dr. Smith possesses the requisite expertise to opine as to the analysis of the particle size distribution of MSN's ANDA Product.

Plaintiff argues that Dr. Smith is qualified as an expert to opine on particle distribution in her own right, or alternatively, because she was on a "team" with Dr. Byrn. Neither argument renders her testimony admissible.

First, at no point does Plaintiff provide evidence she is experienced with the specific analytical technique required by claim 3—laser light scattering particle size analysis. At best, Plaintiff identifies evidence that Dr. Smith is an expert in *some* light-based analytical spectroscopy experiments. *See* D.I. 97 ("Resp. Br.") at 4-6. But simply being an expert in one field does not make one an expert in a related field. Rather, the witness must not testify outside of his or her expertise, and "more specific knowledge is required to support more specific opinions." *Allscripts Healthcare, LLC v. Andor Health, LLC*, 21-704-MAK, 2022 WL 3021560, at *23 (D. Del. July 29, 2022). MSN is not attacking Dr. Smith's qualifications to testify as an expert in this case in general. Rather, she lacks the more specific knowledge of laser light scattering particle size analysis necessary to render her opinions, as Dr. Smith is "not an expert" in particle size analysis and she admitted that her experience with the technique is "not very extensive." *See* D.I. 95, Ex.

1

A Pamela Smith Deposition Transcript ("Smith Tr.") at 103:18-23, 92:20-23. That, in turn, indicates her opinions on the particle size distribution of MSN's ANDA Product is outside of her expertise.

The fact that Dr. Smith may be qualified as a person of ordinary skill in the art in this case is of no moment, either. Simply because a POSA may "have access to, and draw upon" a team of individuals with knowledge and skill "outside his or her primary training" (Resp. Br. at 5) does not mean they have the requisite experience to opine as to analytical techniques with which she is not familiar. Plaintiff's argument is merely a red herring to distract from the fact that Dr. Smith lacks the qualifications to assess the veracity of the testing results. For instance, she could not answer fundamental questions about why certain steps were performed, including why or how the sample was split into two runs, and further admitted she did not "know how to properly do the analysis." Smith Tr. at 105:16-23; *see also* 104:24-105:15 ("Q. How were the two samples separated? A. I believe *Steve told me* that a portion was poured into the particle size analyzer. That was done, and then the second portion was poured in, *but I don't know more than that*.") (emphasis added).

Dr. Smith's own words show she is not qualified to opine as an expert on the particle size distribution experiments, and Plaintiff should not be allowed to qualify her by association with a colleague who should have been, but was not, disclosed as an expert in this case.

### B. Dr. Smith's Opinions are Unreliable Because They Simply Repeat Dr. Byrn's Out-of-Court Opinions and Analysis

Plaintiff attempts to improperly associate the knowledge of Dr. Byrn to Dr. Smith by stating that Dr. Byrn "may have more experience," and that Dr. Smith "was justified in relying on Dr. Byrn's testing due to their close working relationship," and finally that "their respective areas of expertise are closely related, if not overlap." Resp. Br. at 6. But this points to the fundamental

2

problem with her testimony: she is merely providing Dr. Byrn's opinions on particle size, not hers.

First, Plaintiff attempts to sidestep the issue by pointing to the fact that Dr. Smith "discussed the results with Dr. Byrn" and therefore "did not blindly accept the results" of the testing. Resp. Br. at 7. But they fail to note her testimony indicates exactly the opposite: that she "was relying on the expertise of [her] colleague Steve Byrn and the expertise of the expert at Purdue. So [she doesn't]t have any reason to question that they didn't do the analysis properly, ***even if [she didn't] know how to properly do the analysis.***" Smith Tr., 105:19-23. This, again, is underscored by the numerous instances in which Dr. Smith opined that she did not know what was done during testing or why. *See, e.g.*, *id.* at 103:8-104:19; 105:24-106:2; 107:11-108:1. Further, Dr. Smith's own testimony undercuts Plaintiff's argument that she "did not delegate the laser light particle size analysis to some unknown third party," (Resp. Br. at 7) as neither she nor Dr. Byrn could recall the name of the "expert at the CP3 lab" who actually carried out the testing. *Id.* at 102:11-103:7. It follows that Dr. Smith is not applying her own expertise in rendering her opinions on the particle size distribution in MSN's ANDA Product.

Plaintiff's argument for admissibility is that "[i]t is not unusual for experts such as these, who have worked together for many years, to collaborate on a project where one of the experts may have more experience than the other in a specific area," and thus Dr. Byrn's opinions are the sort that an "expert[] in the particular field would reasonably rely on[.]" *See* Resp. Br. at 7. But Plaintiff does not point to a single case that stands for such a proposition. Rather, *Dura* demonstrates that the focus is on whether the expert is testifying within his or her expertise, *not* the closeness of the working relationship. *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002); *see id.* at 614. Indeed, the expert's opinion in *Dura* was inadmissible even though he was relying on the opinions of other experts within his firm. *See id.* at 611-12.

3

Because the testifying expert lacked expertise sufficient to show the *reliability* of the methods used in developing the groundwater flow models he relied upon, and without admissible testimony from his colleagues as to its reliability, the expert's testimony was properly excluded. *See id.* at 615.

Similarly, Dr. Smith's complete deference to Dr. Byrn's particle size analysis is inherently unreliable. "[D]eferring to others is rarely a 'reliable principle [or] method[ ].'" *United States v. DynCorp Int'l LLC*, No. 16-1473 (PLF), 2024 WL 604923, at *14 (D.D.C. Jan 25, 2024). But that is what Dr. Smith did: here, Dr. Byrn and the unnamed Purdue lab expert exercised professional judgment in selecting equipment, validating the method, determining the sample should be split into two runs, and setting equipment parameters to generate reliable results, yet Dr. Smith could not testify as to what they actually did or why. Smith Tr. 102:11-19 (air pressure drop); 103:29-104:18 (validation and instrument parameters); 105:11-106:2 (separation of the sample into two runs). And Dr. Byrn inexplicably averaged the results of two runs—one that generated a D90 value outside the claims, one that generated a D90 value within the claimed range—to generate a single D90 value on which Dr. Smith relied in her infringement analysis. *See* D.I. 95, Ex. B Smith Opening Report ("Smith Rep.") at ¶ 85; Smith Tr. 108:20-109:2. And when asked why that was done, Dr. Smith testified that she was relying on Dr. Byrn's judgment. Smith Tr. 110:9-19 ("All I know is that Dr. Byrn, who was the expert in the field, felt it was appropriate to average the two numbers. And I have no reason to question his decision."). This demonstrates that Dr. Smith is merely a mouthpiece for Dr. Byrn's opinion. Dr. Smith's opinion should thus be excluded as unreliable.

Plaintiff further attempts to distinguish *Dura* on the ground that there is no reason to believe that the "laser light scattering analysis would be as subjective or complicated as the type of expert opinion provided in *Dura Auto Systems*." Resp. Br. at 10. But *Dura* does not stand for the

4

proposition that an expert can rely on another's expertise when it is not "subjective or complicated." Instead, it accepts an expert's reliance on others who "collect data for [the expert] to massage or apply concededly appropriate techniques in a concededly appropriate manner, or otherwise perform routine procedures," but not where the expert "lacks the necessary expertise to determine whether the techniques were appropriately ***chosen and applied***[.]" *Dura Auto. Sys.*, 285 F.3d at 615.[1] Applying this framework, it is clear that Dr. Smith's testimony is inadmissible, as she cannot opine that laser light scattering particle size analysis was reliably applied. For instance, while Plaintiff points to Exhibit 9 of Dr. Smith's report to support that validation runs for particle distribution analysis is routine, Dr. Smith explicitly said she had not relied on Exhibit 9 to assess whether Dr. Byrn's work was done correctly. Smith Tr. 113:2-114:13 ("So it's fair to say you didn't consider these sections on particle size characterization in determining whether the particle size testing of MSN's product was done correctly? A. I did not use this article in that way, no."). And even if particle size analysis were routine for some experts, Dr. Smith still admitted it was outside her field of expertise. Smith Tr. 92:20-23 ("my experience with particle size analysis is not very extensive"); 103:18-23. That, in turn, clearly points to excluding Dr. Smith's testimony as unreliable.

---

[1] Plaintiff also attempts to diminish the significance of *Dura* on the grounds that it is from a different circuit. But they cite no controlling precedent from Delaware or the Third Circuit that indicates the principles articulated in *Dura* are not valid law here. And the District of Delaware has favorably cited *Dura* in other circumstances. *See Shire Viropharma Inc. v. CSL Behring LLC*, No. 17-414, 2021 WL 1227097, at *25 (D. Del. Mar. 31, 2021); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80-LPS-MPT, 2013 WL 2178047, at *13 (D. Del. May 20, 2013).

5

Third, Plaintiff asserts that there is "no . . . support for [MSN's] contention that Dr. Byrn's testimony would be inadmissible." Resp. Br. at 8. But Dr. Byrn has not served an expert report in this case. Since Dr. Byrn is not testifying in this case, his out-of-court statements to Dr. Smith are inadmissible hearsay, as are her repetition of them. *See* Fed. R. Ev. 801(c); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007). And "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Id*. Dr. Smith's testimony on claim 3 thus should be excluded.

### C. Dr. Smith Offers No Helpful Testimony to Tie the Testing Done to the Equipment and Techniques Required in the Patent Specification.

Plaintiff attempts to diminish the clear import of the specification's statement that particle size distribution not only needs to be measured using a specific technique (laser light scattering particle size analysis) but on specific equipment as well. Dr. Smith made no showing that the testing done is representative of the results that would be obtained with that equipment. Specifically, Dr. Smith can offer no knowledge or assistance on why the decisions made by Dr. Byrn to use a more modern instrument do or do not impact the analysis; the most she can offer is that the older unit could not be located. Smith Tr. at 111:22-112:3. That, in turn, points to her testimony being a poor fit for this case and this patent.

### III. CONCLUSION

For the reasons stated above, Defendants respectfully requests the Court enter an Order to exclude testimony and opinions by Dr. Pamela Smith regarding claim 3 of the '721 patent and any particle size distribution testing and analysis.

| | |
|---|---|
| Dated: October 3, 2024 | Seitz, Van Ogtrop & Green, P.A. |
| *Of Counsel:* | */s/ James S. Green, Jr.* |
| | James S. Green, Jr. (#4406) |
| Michael Baldwin | 222 Delaware Avenue, Suite 1500 |
| Bradford C. Frese | Wilmington, DE 19801 |
| Janine A. Carlan | (302) 888-7607 |
| Richard J. Berman | jsgreen@svglaw.com |
| ArentFox Schiff LLP | |
| 1717 K. St. NW | |
| Washington, DC 20006 | |
| T: (202) 857-6000 | *Counsel for Defendants* |
| michael.baldwin@afslaw.com | *MSN Laboratories Private Ltd. and* |
| bradford.frese@afslaw.com | *MSN Pharmaceuticals, Inc.* |
| janine.carlan@afslaw.com | |
| richard.berman@afslaw.com | |

Julie A. Vernon
Arent Fox Schiff LLP
233 South Wacker Drive,
Suite 7100
Chicago, Illinois 60606
T: (312) 258-5500
julie.vernon@afslaw.com