IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ACADIA PHARMACEUTICALS INC., | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 1:22-cv-01387-GBW |
| v. | ) ) | (**Consolidated**) |
| AUROBINDO PHARMA LIMITED et al., | ) ) ) | **PUBLIC VERSION FILED** |
| Defendants. | ) ) ) | **NOVEMBER 14, 2024** |

**PRETRIAL ORDER EXHIBIT 4:**

**PLAINTIFF'S STATEMENT OF THE ISSUES OF LAW**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

**I.**    INFRINGEMENT ...................................................................................................... 1

    A.    Direct Infringement .................................................................................... 2

    B.    Infringement Under 35 U.S.C. § 271(e)(2)(A) ........................................... 2

    C.    Indirect Infringement ................................................................................. 4

    D.    Induced Infringement ................................................................................. 5

    E.    Contributory Infringement ......................................................................... 7

**II.**    VALIDITY ............................................................................................................... 7

    A.    Obviousness ............................................................................................... 8

    B.    Objective Indicia of Nonobviousness ...................................................... 18

        i.    Unexpected Results ....................................................................... 21

        ii.    Skepticism in the Art .................................................................... 23

        iii.    Commercial Success ...................................................................... 24

    C.    § 112 – Written Description ..................................................................... 27

    D.    § 112 – Indefiniteness .............................................................................. 31

    E.    § 112 – Enablement .................................................................................. 34

**III.**    REMEDIES ............................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Abbott Labs. v. Andrx Pharm., Inc.,*
    473 F.3d 1196 (Fed. Cir. 2007).................................................................................31

*Abbott Labs. v. TorPharm, Inc.,*
    300 F.3d 1367 (Fed. Cir. 2002)....................................................................................3

*Abbott Labs. v. TorPharm, Inc.,*
    503 F.3d 1372 (Fed. Cir. 2007).........................................................................3, 14, 15

*Acorda Therapeutics, Inc. v. Roxane Lab'ys, Inc.,*
    903 F.3d 1310 (Fed. Cir. 2018)..............................................................................27, 28

*In re Alfuzosin Hydrochloride Patent Litig.,*
    No. 08-1941, 2010 WL 1956287 (D. Del. May 14, 2010) .............................................24, 26

*All Dental Prodx, LLC v. Advantage Dental Products, Inc.,*
    309 F.3d 774, 779-80 (Fed. Cir. 2002) ......................................................................33

*Allergan, Inc. v. Apotex Inc.,*
    754 F.3d 952 (Fed. Cir. 2014)....................................................................................13

*Allergan, Inc. v. Sandoz Inc.,*
    796 F.3d 1293 (Fed. Cir. 2015)...............................................................17, 18, 22, 23

*Allergan, Inc. v. Watson Labs., Inc.-FL,*
    869 F. Supp. 2d 456 (D. Del. 2012) ...........................................................................31

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.,*
    111 F.4th 1358, 1373 (Fed. Cir. 2021)  .....................................................................27

*Andersen Corp. v. Fiber Composites, LLC,*
    474 F.3d 1361 (Fed. Cir. 2007).................................................................................31

*Apple Inc. v. Samsung Elecs. Co.,*
    839 F.3d 1034 (Fed. Cir. 2016) (en banc)...................................................................17

*Ariad Pharm., Inc. v. Eli Lilly & Co.,*
    598 F.3d 1336 (Fed. Cir. 2010)..............................................................................28, 29

*In re Armodafinil Patent Litig. Inc.,*
    939 F. Supp. 2d 456 (D. Del. 2013)........................................................................12, 16

*AstraZeneca LP v. Apotex, Inc.,*
   633 F.3d 1042 (Fed. Cir. 2010)................................................................2, 5, 6

*Bilstad v. Wakalopulos,*
   386 F.3d 1116 (Fed. Cir. 2004)................................................................30

*Biosig Instruments, Inc. v. Nautilus, Inc.,*
   783 F.3d 1374 (Fed. Cir. 2015)................................................................32

*Boston Scientific Corp. v. Johnson & Johnson,*
   647 F.3d 1353 (Fed. Cir. 2011)................................................................30

*Bristol-Myers Squibb Co. v. Royce Labs., Inc.,*
   69 F.3d 1130 (Fed. Cir. 1995)................................................................36

*Centrak, Inc. v. Sonitor Tech., Inc.,*
   915 F.3d 1360 (Fed. Cir. 2019)................................................................2

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.,*
   725 F.3d 1341 (Fed. Cir. 2013)................................................................10

*Commil USA, LLC v. Cisco Sys., Inc.,*
   135 S. Ct. 1920 (2015)................................................................2

*Cordis Corp. v. Medtronic AVE, Inc.,*
   339 F.3d 1352 (Fed. Cir. 2003)................................................................30

*Creative Compounds, LLC v. Starmark Labs.,*
   651.F.3d 1303, 1314 (Fed. Cir. 2011)................................................................2

*Custom Accessories, Inc. v. Jeffrey-Allan Indus.,*
   807 F.2d 955 (Fed. Cir. 1986)................................................................21

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.,*
   676 F.3d 1063 (Fed. Cir. 2012)................................................................9

*Daiichi Sankyo Co. v. Mylan Pharms. Inc.,*
   670 F. Supp. 2d 359 (D.N.J. 2009), aff'd sub nom. Daiichi Sankyo Co. v.
   Matrix Lab'ys, Ltd., 619 F.3d 1346 (Fed. Cir. 2010)................................................................26

*Dana Corp. v. Am. Axle & Mfg.,*
   279 F.3d 1372 (Fed. Cir. 2002)................................................................9

*DDR Holdings, LLC v. Hotels.com, L.P.,*
   773 F.3d 1245 (Fed. Cir. 2014)................................................................34

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.,*
   851 F.2d 1387 (Fed. Cir. 1988)................................................................21

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009)......................................................................17

*E.I. DuPont de Nemours & Co. v. Synvina C.V.*,
   904 F.3d 996 (Fed. Cir. 2018)........................................................................18

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
   435 F. App'x 917 (Fed. Cir. 2011) ...................................................................8

*Eli Lilly & Co. v. Sicor Pharms., Inc.*,
   705 F. Supp. 2d 971 (S.D. Ind. 2010)..............................................................24

*Eli Lilly & Co. v. Teva Parenteral Meds.*,
   845 F.3d 1357 (Fed. Cir. 2017)...................................................................5, 32

*Falko-Gunter Falkner v. Inglis*,
   448 F.3d 1357 (Fed. Cir. 2006).......................................................................30

*In re Fenn*,
   639 F.2d 762 (C.C.P.A. 1981) ........................................................................22

*Ferring B.V. v. Watson Labs., Inc.-Fla.*,
   764 F.3d 1401 (Fed. Cir. 2014)........................................................................8

*Fox Factory, Inc. v. SRAM, LLC*,
   944 F.3d 1366 (Fed. Cir. 2019).......................................................................20

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
   655 F.3d 1291 (Fed. Cir. 2011).......................................................................23

*Glaxo, Inc. v. Novopharm, Ltd.*,
   110 F.3d 1562 (Fed. Cir. 1997).........................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) .........................................................................................2

*Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*,
   865 F.3d 1348 (Fed. Cir. 2017)..................................................................13, 23

*In re Huai-Hung Kao*,
   639 F.3d 1057 (Fed. Cir. 2011)..................................................................19, 26

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986)..................................................................19, 35

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   645 F.3d 1336 (Fed. Cir. 2011).......................................................................30

*Immunex Corp. v. Sandoz Inc.,*
    395 F. Supp. 3d 366 (D.N.J. 2019) ......................................................................22

*Immunex Corporation v. Sandoz Inc.,*
    964 F.3d 1049 (Fed. Cir. 2020).............................................................................20

*Insite Vision Inc. v. Sandoz, Inc.,*
    783 F.3d 853 (Fed. Cir. 2015)..........................................................................12, 13

*Institut Pasteur v. Focarino,*
    738 F.3d 1337 (Fed. Cir. 2013).............................................................................14

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.,*
    821 F.3d 1359 (Fed. Cir. 2016).............................................................................13

*Intendis GmbH v. Glenmark Pharm. Ltd.,*
    117 F. Supp. 3d 549 (D. Del. 2015), aff'd, 822 F.3d 1355 (Fed. Cir. 2016) .........27

*Invitrogen Corp. v. Clontech Labs., Inc.,*
    429 F.3d 1052 (Fed. Cir. 2005).............................................................................29

*J.T. Eaton & Co. v. Atlantic Paste & Glue Co.,*
    106 F.3d 1563 (Fed. Cir. 1997).............................................................................26

*Janssen Prods., L.P. v. Lupin Ltd.,*
    109 F. Supp. 3d 650 (D.N.J. 2014) ......................................................................24

*Karsten Mfg. Corp. v. Cleveland Golf Co.,*
    242 F.3d 1376 (Fed. Cir. 2001).............................................................................16

*Key Pharm. v. Hercon Labs. Corp.,*
    161 F.3d 709 (Fed. Cir. 1998)...............................................................................34

*Knoll Pharm. Co. v. Teva Pharms. USA, Inc.,*
    367 F.3d 1381 (Fed. Cir. 2004).............................................................................24

*In re Kotzab,*
    217 F.3d 1365 (Fed. Cir. 2000).............................................................................10

*In re Kratz,*
    592 F.2d 1169 (C.C.P.A. 1979) ............................................................................11

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007)..........................................................................................11, 12

*Lampi Corp. v. American Power Prods., Inc.,*
    228 F.3d 1365 (Fed. Cir. 2000).............................................................................29

*Leo Pharm. Prods., Ltd. v. Rea,*
 726 F.3d 1346 (Fed. Cir. 2013)...................................................................................19, 22

*Life Techs., Inc. v. Clontech Labs., Inc.,*
 224 F.3d 1320 (Fed. Cir. 2000).........................................................................................10

*Liquid Dynamics Corp. v. Vaughan Co., Inc.,*
 449 F.3d 1209 (Fed. Cir. 2006)...........................................................................................2

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
 424 F.3d 1336 (Fed. Cir. 2005).........................................................................................30

*Markman v. Westview Instruments, Inc.,*
 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) ................................1

*Martek BioSciences Corp. v. Nutrinova, Inc.,*
 579 F.3d 1363 (Fed. Cir. 2009).....................................................................................2, 30

*Mentor Graphics Corp. v. EVE-USA, Inc.,*
 851 F.3d 1275 (Fed. Cir. 2017)....................................................................................33, 34

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.,*
 28 F. Supp. 2d 480 (D. Del. 2002), aff'd, 347 F.3d 1367 (Fed. Cir. 2003) ..................1, 21, 26

*Merck Sharp & Dohme, Corp. v. Sandoz, Inc.,*
 No. 12-3289, 2013 WL 12203112 (D.N.J. June 7, 2013)....................................................11

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,*
 370 F.3d 1354 (Fed. Cir. 2004)...........................................................................................9

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.,*
 520 F.3d 1367 (Fed. Cir. 2008).........................................................................................35

*Microsoft Corp. v. i4i Ltd. P'ship,*
 564 U.S. 91 (2011) ...............................................................................................................9

*Millennium Pharm., Inc. v. Sandoz Inc.,*
 862 F.3d 1356 (Fed. Cir. 2017).........................................................................................22

*Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,*
 976 F.2d 1559 (Fed. Cir. 1992).........................................................................................19

*Mintz v. Dietz & Watson, Inc.,*
 679 F.3d 1372 (Fed. Cir. 2012)....................................................................................19, 22

*Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.,*
 533 F.Supp.3d 170 (D.N.J. 2021) .....................................................................................27

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
134 S.Ct. 2120 (2014) ...........................................................................................32, 33, 34

*Neptune Generics, LLC v. Eli Lilly & Co.,*
921 F.3d 1372 (Fed. Cir. 2019) .......................................................................................25

*Neupak, Inc. v. Ideal Mfg. & Sales Corp.,*
41 F. App'x 435 (Fed. Cir. 2002) ...............................................................................25, 26

*Nevro Corp. v. Boston Sci. Corp.,*
955 F.3d 35 (Fed. Cir. 2020) ...........................................................................................33

*Novartis Pharms. Corp. v. Par Pharm., Inc.,*
48 F. Supp. 3d 733 (D. Del. 2014), aff'd sub nom. Novartis Pharms. Corp. v.
Watson Lab'ys, Inc., 611 F. App'x 988 (Fed. Cir. 2015) ...........................................12, 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
*572 U.S. 545 (2014)* .........................................................................................................*37*

*In re Omeprazole Patent Litig.,*
536 F.3d 1361 (Fed. Cir. 2008) .........................................................................................4

*One-E-Way, Inc. v. Int'l Trade Comm'n,*
859 F.3d 1059 (Fed. Cir. 2017) .......................................................................................32

*Oren Techs., LLC v. Proppant Express Invs. LLC,*
No. 2019-1778, 2021 WL 3120819 (Fed. Cir. July 23, 2021) ........................................25

*Orexo AB v. Actavis Elizabeth LLC,*
903 F.3d 1265 (Fed. Cir. 2018) .......................................................................................24

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.,*
348 F. Supp. 2d 713 (N.D.W. Va. 2004) ...............................................................22, 24, 25

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.,*
520 F.3d 1358 (Fed. Cir. 2008) ...................................................................................10, 19

*OSRAM GmbH v. Int'l Trade Comm'n,*
505 F.3d 1351 (Fed. Cir. 2007) .....................................................................................9, 34

*Otsuka Pharm. Co. v. Sandoz, Inc.,*
678 F.3d 1280 (Fed. Cir. 2012) .......................................................................................10

*Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.,*
2018 WL 4043159 (D. Del. 2018), aff'd on other grounds, 945 F.3d 1184
(Fed. Cir. 2019) ..................................................................................................................4

*Pfizer Inc. v. Teva Pharm. USA, Inc.*,
    555 F. App'x 961 (Fed. Cir. 2014) ...................................................................35

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007)..............................................................10, 13

*Plantronics, Inc. v. Aliph, Inc.*,
    724 F.3d 1343 (Fed. Cir. 2013)..............................................................18, 21

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017) ....................................................................33

*Prometheus Labs., Inc. v. Roxane Labs., Inc.*,
    No. 11-230, 2013 WL 6627640 (D.N.J. Dec. 16, 2013).................................9

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
    853 F.3d 1370 (Fed. Cir. 2017) ....................................................................17

*S3 Inc. v. nVidia Corp.*,
    259 F.3d 1364 (Fed. Cir. 2001)....................................................................30

*Sanofi v. Watson Labs. Inc.*,
    875 F.3d 636 (Fed. Cir. 2017)...............................................................6, 12

*Sanofi-Synthelabo v. Apotex, Inc.*,
    550 F.3d 1075 (Fed. Cir. 2008)....................................................................11

*In re Soni*,
    54 F.3d 746 (Fed. Cir. 1995)...................................................................22, 23

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017)..............................................................33, 34

*St. Jude Medical, Inc. v. Access Closure, Inc.*,
    729 F.3d 1369 (Fed. Cir. 2013)....................................................................16

*Streck, Inc. v. Research & Diagnostics Sys., Inc.*,
    665 F.3d 1269 (Fed. Cir. 2012)....................................................................29

*Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*,
    731 F.3d 1271 (Fed. Cir. 2013)...................................................................1, 4

*Takeda Chem. Indus., Ltd. v. Mylan Labs. Inc.*,
    417 F. Supp. 2d 341 (S.D.N.Y. 2006)...........................................................26

*Takeda Chem. Indus. v Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008)....................................................................37

*Tarkus Imaging, Inc. v. Adobe Sys.,*
   No. 10-63-LPS, 2012 WL 2175788 (D. Del. June 14, 2012) (J. Stark)...................................35

*Tec Air, Inc. v. Denso Mfg. Michigan Inc.,*
   192 F.3d 1353 (Fed. Cir. 1999)..................................................................................17, 26

*Teva Pharmaceuticals International GmbH v. Eli Lilly and Company,*
   8 F.4th 1349 (Fed. Cir. 2021) .......................................................................................20, 21

*Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc.,*
   2020 WL 6809812 (2020).....................................................................................................13

*Unigene Labs., Inc. v. Apotex, Inc.,*
   655 F.3d 1352 (Fed. Cir. 2011)......................................................................................11, 16

*Union Oil Co. of Cal. v. Atlantic Richfield Co.,*
   208 F.3d 989 (Fed. Cir. 2000).............................................................................................31

*Vanda Pharm., Inc. v. Roxane Labs., Inc.,*
   203 F. Supp. 3d 412 (D. Del. 2016), aff'd, 887 F.3d 1117 (Fed. Cir. 2018) ..........................15

*Vanda Pharms. Inc. v. West-Ward Pharms.,*
   887 F.3d 1117 (2018).....................................................................................3, 6, 8, 28

*Vas-Cath Inc. v. Mahurkar,*
   935 F.2d 1555 (Fed. Cir. 1991)...........................................................................................29

*ViiV Healthcare UK Ltd. v. Lupin Ltd.,*
   6 F. Supp. 3d 461 (D. Del. 2013) (Andrews, J.,) ..................................................................15

*In re Wands,*
   858 F.2d 731 (Fed. Cir. 1988).............................................................................................35

*Warner-Lambert Co. v. Apotex Corp.,*
   316 F.3d 1348 (Fed. Cir. 2003).........................................................................................4, 6

*WBIP, LLC v. Kohler Co.,*
   829 F.3d 1317 (Fed. Cir. 2016)..................................................................................20, 24, 27

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.,*
   231 F.3d 1339 (Fed. Cir. 2000).....................................................................................14, 37

## Statutes

21 U.S.C.
   § 355(b)(3) ...........................................................................................................................3

21 U.S.C.
   § 355(j)(2)(A)(vii)(I)-(IV) ................................................................................................2, 3

35 U.S.C. § 103 .................................................................................................................35

35 U.S.C. § 112 .................................................................................................................28

35 U.S.C. § 271 ...........................................................................................1,2,3,4,6,7,21,35,36

35 U.S.C. § 282 ..............................................................................................................9, 35

35 U.S.C. § 285 .................................................................................................................37

Federal Food, Drug, and Cosmetic Act § 505(j)...........................................................................4

Hatch-Waxman Act ..............................................................................................................3

## PLAINTIFF'S STATEMENT OF THE ISSUES
## OF LAW THAT REMAIN TO BE LITIGATED[1]

Plaintiff ACADIA Pharmaceuticals Inc. ("ACADIA" or "Plaintiff") contends that the issues of law that remain to be litigated at trial are as follows:[2]

## I.    INFRINGEMENT

1.    A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States during the term of the patent." 35 U.S.C. § 271(a); *see also Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 228 F. Supp. 2d 480, 485 (D. Del. 2002), *aff'd*, 347 F.3d 1367 (Fed. Cir. 2003). Moreover, "whoever actively induces infringement of a patent or sells a material for use in practicing a patented process is liable as an infringer." *Id.*

2.    Infringement is a question of fact. *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013).

3.    The determination of patent infringement involves a two-step process: first, the Court determines the meaning and scope of the asserted patent claims. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Second, the Court compares the construed claims to the accused product. *Id.* Based on that comparison, "[d]irect infringement can be found when a defendant makes a product containing 'each and every

---

[1] To the extent that any issues of fact set forth in Exhibit 2 of the Joint Pretrial Order may be considered issues of law, Plaintiff incorporates those portions of Exhibit 2 herein by reference. To the extent any of the issues of law set forth in this Exhibit 4 may be considered issues of fact, Plaintiff incorporates by reference those portions of this Exhibit 4 into Exhibit 2.

[2] Plaintiff's identification of the issues of law that remain to be litigated is not exhaustive and is based on Plaintiff's current understanding of Defendants' claims and defenses. Plaintiff reserves the right to modify or supplement the issues of law to be litigated in light of any pretrial rulings by the Court and/or any further identified issues of law by Defendants, including those identified during expert discovery, and/or to address any additional developments in the case, including anticipated motions. To the extent that Defendants intend or attempt to introduce different or additional issues of law, Plaintiff reserves the right to supplement or amend this Statement and contest those issues, and to present any and all rebuttal evidence in response to those issues.

limitation set forth in a claim.'" *Centrak, Inc. v. Sonitor Tech., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019) (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)).  The party asserting patent infringement has the burden of proving so by a preponderance of the evidence.  *See Creative Compounds, LLC v. Starmark Labs.*, 651. F.3d 1303, 1314 (Fed. Cir. 2011).

### A.     Direct Infringement

4.     "Direct infringement is a strict-liability offense."  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (citation omitted).   "Direct infringement has long been understood to require no more than the unauthorized use of the patented invention."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011).  Thus, "a direct infringer's knowledge or intent is irrelevant."  *Id.*

5.     "A patentee may prove infringement by any method of analysis that is probative of the fact of infringement, and circumstantial evidence may be sufficient."  *Martek BioSciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (internal citations and quotations omitted); *see also Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence.") (citation omitted).

### B.     Infringement Under 35 U.S.C. § 271(e)(2)(A)

6.     With the submission of an Abbreviated New Drug Application ("ANDA"), the ANDA applicant is required to submit one of four certifications "for each patent listed in the Orange Book that claims either the listed drug or a use of the listed drug for which the applicant is requesting approval."  *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1046 (Fed. Cir. 2010).  Pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(I)-(IV), an ANDA applicant must certify "(I) that . . . patent information has not been filed, (II) that such patent has expired, (III) . . . the date on which

such patent will expire, or (IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the [generic drug for which ANDA approval is sought]." 21 U.S.C. § 355(j)(2)(A)(vii)(I)-(IV).  With this last certification, known as a "Paragraph IV certification," the ANDA applicant must provide notice to the patent owner and branded drug manufacturer of the certification and a supporting explanation of the basis for its assertion of invalidity or non-infringement.  *See* 21 U.S.C. § 355(b)(3).

7.    Submitting an ANDA is an act of infringement "if the purpose of such submission is to obtain approval . . . to engage in the commercial manufacture, use, or sale of a drug . . . claimed in a patent or the use of which is claimed in a patent before the expiration of such patent." 35 U.S.C. § 271(e)(2).  Accordingly, "the mere act of filing a Paragraph IV ANDA constitutes an act of patent infringement." *Vanda Pharms. Inc. v. West-Ward Pharms.*, 887 F.3d 1117, 1126 (2018) (quoting *Caraco Pharm. Labs., Ltd. v. Forest Labs. Inc.*, 527 F.3d 1278, 1283 (Fed. Cir. 2008)).

8.    Thus, Section 271(e)(2)(A) creates an artificial act of infringement to enable the resolution of an infringement dispute before the ANDA applicant has actually made or marketed the proposed product.  "While the Supreme Court has characterized infringement as defined in the Hatch-Waxman Act as 'highly artificial,' by statutory command it is infringement nonetheless." *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1379 (Fed. Cir. 2007) (internal citations omitted).

9.    The infringement analysis based upon ANDA filing is "based on consideration of all the relevant evidence, including the ANDA filing, other materials submitted by the accused infringer to the FDA, and other evidence provided by the parties."  *Abbott Labs. v. TorPharm, Inc.*, 300 F.3d 1367, 1373 (Fed. Cir. 2002).  As such, in the context of Hatch-Waxman litigation, "[w]hat

[the ANDA applicant] has asked the FDA to approve as a regulatory matter" controls the infringement analysis. *Sunovion*, 731 F.3d at 1278-79. Accordingly,

> "[w]hat a generic applicant asks for and receives approval to market, if within the scope of a valid claim, is an infringement . . . . Because drug manufacturers are bound by strict statutory provisions to sell only those products that comport with the ANDA's description of the drug, an ANDA specification defining a proposed generic drug in a manner that directly addresses the issue of infringement will control the infringement inquiry."

*Id.* at 1279 (internal quotations and citations omitted).

10.    Under 35 U.S.C. § 271(e)(2)(A), Defendants have infringed the asserted claims of the Patent-in-Suit by filing their ANDAs under Section 505(j) of the Federal Food, Drug, and Cosmetic Act for drug products claimed in a patent or the use of which is claimed in a patent, with the purpose of marketing the drug before the expiration of the patent. *See In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1367 (Fed. Cir. 2008); *see also* 35 U.S.C. § 271(e)(2)(A).

## C.    <u>Indirect Infringement</u>

11.    Infringement under § 271(e)(2) also includes indirect infringement arising from the sale or method of using a drug for which an ANDA with a paragraph IV certification has been filed. *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365-66 (Fed. Cir. 2003). The Federal Circuit has explained how infringement applies under § 271(e)(2) stating:

> "[T]he substantive determination whether actual infringement or *inducement* will take place is determined by traditional patent infringement analysis, just the same as it is in other infringement suits, including those in a non-ANDA context, the only difference being that the inquiries now are hypothetical because the allegedly infringing product has not yet been marketed. The plain language of 35 U.S.C.A. § 271(e)(2)(A) does not alter a patentee's burden of proving infringement. The proper inquiry under § 271(e)(2)(A) is 'whether, if a particular drug were put on the market, it would infringe the relevant patent.'"

*Id.* (emphasis added, citations and quotations omitted). Thus, the Court can find a defendant's proposed label to indirectly infringe when said label encourages the sale or method of using a drug with the intent to induce infringement of patented claims. *See Pernix Ireland Pain DAC v. Alvogen*

*Malta Operations Ltd.*, 2018 WL 4043159, *13-*15 (D. Del. 2018), *aff'd on other grounds* (obviousness), 945 F.3d 1184 (Fed. Cir. 2019) (Bryson, C.J., sitting by designation).

    **D.    Induced Infringement**

    12.    35 U.S.C. § 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  "[L]iability for induced infringement under § 271(b) must be predicated on direct infringement."  *Eli Lilly & Co. v. Teva Parenteral Meds.*, 845 F.3d 1357, 1363-64 (Fed. Cir. 2017) (quotations and citations omitted).  The pertinent inquiry when determining infringement by inducement is whether the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.  *See id.* at 1368.

    13.    In instances where "no single actor performs all steps of a method claim, direct infringement only occurs if 'the acts of one are attributable to the other such that a single entity is responsible for the infringement.'"  *Id.* at 1364, 1368-69 (finding direct infringement attributable to physicians based on their control of patients' performance of steps of the asserted claims and holding defendants liable for inducing that infringement) (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (determining that directing or controlling others' performance includes situations where the actor "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance.").

    14.    In the context of Hatch-Waxman litigation, specific intent to induce is determined by looking at "whether the proposed label instructs users to perform the patented method.  If so, the proposed label may provide evidence of . . . affirmative intent to induce infringement."  *AstraZeneca LP*, 633 F.3d at 1060 (finding specific intent to induce infringement because the ANDA applicant "included instructions in its proposed label that will cause at least some users to infringe the asserted method claims"); *see also Eli Lilly & Co.*, 845 F.3d at 1368-69 ("the product

- 5 -

labeling that Defendants seek [which] would inevitably lead some physicians to infringe establishes the requisite intent for inducement").

15.    Such circumstantial evidence is sufficient to support a finding of specific intent – direct evidence is not required. *AstraZeneca*, 633 F.3d at 1060.  "The contents of the label itself may permit the inference of specific intent to encourage, recommend, or promote infringement." *Vanda*, 887 F.3d at 1129; *see also Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 646 (Fed. Cir. 2017).

16.    Moreover, specific intent to induce is supported by the fact that an ANDA applicant is aware of the infringement problem presented by the proposed label but nonetheless proceeds with its plans to distribute its generic product. *AstraZeneca*, 633 F.3d at 1060-61 (also noting that the ANDA applicant "was free to submit a Paragraph III certification and wait until the patents expired before . . . fil[ing] a Paragraph IV certification and challenge infringement and validity of the asserted claims," so the fact they proceeded despite being aware that the label presented infringement problems supports a finding of specific intent).

17.    "A patentee does not need to prove an actual past instance of direct infringement by a physician to establish infringement under 35 U.S.C. § 271(e)(2)(A)." *Vanda Pharms.*, 887 F.3d at 1129-33 ("As we have explained, 'section 271(e)(2)(A) makes it possible for a patent owner to have the court determine whether, if a particular drug *were* put on the market, it *would* infringe the relevant patent.' *Bristol-Myers Squibb*, 69 F.3d at 1135") (emphases in original).  A § 271(e)(2)(A) infringement suit differs from typical infringement suits in that the infringement inquiries "are *hypothetical* because the allegedly infringing product has not yet been marketed." *Warner-Lambert*, 316 F.3d at 1365 (emphasis added); *see also Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1570 (Fed. Cir. 1997) ("[t]he relevant inquiry is whether patentee

has proven by a preponderance of the evidence that the alleged infringer will likely market an infringing product").

18.     Accordingly, patentee can satisfy its burden to prove the predicate direct infringement by showing that if the proposed ANDA product were marketed, it would infringe the patent-in-suit.  *Vanda*, 887 F.3d at 1129-33; *see, e.g.*, *Ferring B.V. v. Watson Labs., Inc.-Fla.*, 764 F.3d 1401, 1408 (Fed. Cir. 2014) ("The infringement determination is thus based on consideration of all the relevant evidence, and because drug manufacturers are bound by strict statutory provisions to sell only those products that comport with the ANDA's description of the drug, the ANDA itself dominates the analysis." (internal quotation marks and alterations omitted).

### E.    Contributory Infringement

19.     35 U.S.C. Section 271(c) provides that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

## II.    VALIDITY

20.     Under 35 U.S.C. § 282, each of the asserted claims is presumed valid.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011).  Defendants therefore bear the burden of proving any invalidity defense by "clear and convincing evidence."  *Id.*  Because each claim independently bears the presumption of validity, Defendants must prove invalidity of each of the asserted claims. 35 U.S.C. § 282(a) ("Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims."); *Dana*

*Corp. v. Am. Axle & Mfg.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002) (error for the court not to separately evaluate each claim's validity).

21.    The burden of proof (clear and convincing evidence) arises from the presumption that the Patent Office properly performed its administrative functions. *Prometheus Labs., Inc. v. Roxane Labs., Inc.*, C.A. No. 11-230, 2013 WL 6627640, *4 (D.N.J. Dec. 16, 2013) (citing *Microsoft*, 564 U.S. at 97). Where invalidity is asserted on the basis of a reference considered by the Patent Office during prosecution of the patent, a challenger "bears an even heavier burden to prove invalidity." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1368 (Fed. Cir. 2004).

### A.    <u>Obviousness</u>

22.    Under 35 U.S.C. § 103, a patent claim is valid unless the accused infringer proves that the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious to a POSA at the time of the invention. *See* 35 U.S.C. § 103(a). "Obviousness is a question of law based on underlying factual findings." *OSRAM*, 701 F.3d at 706.

23.    To evaluate a claim of obviousness, a court considers the four factors set forth by the Supreme Court in *Graham v. John Deere Co.*: (1) the level of ordinary skill in the pertinent art, (2) the scope and content of the prior art, (3) the differences between the prior art and the claims at issue, and (4) objective considerations of nonobviousness. 383 U.S. 1, 17 (1966). A party seeking to invalidate a patent as obvious must "show by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

24.    Additionally, "hindsight analysis is inappropriate because obviousness must be assessed at the time the invention was made." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1073 (Fed. Cir. 2012); *see also Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) (noting that 35 U.S.C. § 103(a) directs an inquiry into whether the subject matter as a whole "would have been obvious at the time the invention was made").

25.    The Federal Circuit has noted the ease of "fall[ing] victim to the insidious effect of a hindsight syndrome wherein that which only the invention taught is used against its teacher." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).  The Federal Circuit invariably rejects obviousness defenses implicating hindsight.  *See, e.g.*, *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013).

26.    "The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight.  What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art." *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012) (citing 35 U.S.C. § 103(a) ("Patentability shall not be negatived by the manner in which the invention was made.")); *accord Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) ("That the inventors were ultimately successful is irrelevant to whether one of ordinary skill in the art, at the time the invention was made, would have reasonably expected success.").

27.    Similarly, "the internal knowledge" of the patentee "is not relevant to an obviousness defense because such knowledge is not prior art" that would have been known to a POSA.  *Merck Sharp & Dohme, Corp. v. Sandoz, Inc.*, No. 12-3289, 2013 WL 12203112, at *3 (D.N.J. June 7, 2013) ("Because knowledge internal to Merck would, by definition, not be in the

public domain, such information is not relevant [to obviousness].") (citing *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453-44 (Fed. Cir. 1984)); *In re Kratz*, 592 F.2d 1169, 1175 (C.C.P.A. 1979) ("[M]aking weight of the method [the inventor] used in finding the invention is beside the point. The last sentence of 35 U.S.C. § 103, with great clarity, excludes such methodology.").

28.     The obviousness analysis "is made with respect to the subject matter as a whole, not separate pieces of the claim." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1086 (Fed. Cir. 2008). "[I]t is impermissible [as part of the obviousness analysis] to pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art." *Eli Lilly*, 435 Fed. App'x at 921.

29.     As such, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Thus, in viewing the prior art as a whole, the focus is not on the elements disclosed in the prior art, but rather on whether a POSA would have combined known elements in the way claimed in the patent at issue. *See Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) ("[O]bviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined . . . prior art elements in the normal course of research and development to yield the claimed invention").

30.     In order to protect against the "distortion caused by hindsight bias… it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and

claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR Int'l Co.*, 550 U.S. at 418-21 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning."); *Novartis Pharms. Corp. v. Par Pharm., Inc.*, 48 F. Supp. 3d 733, 752 (D. Del. 2014), *aff'd sub nom. Novartis Pharms. Corp. v. Watson Lab'ys, Inc.*, 611 F. App'x 988 (Fed. Cir. 2015) (A party seeking to invalidate a patent claim "must show that a PHOSITA would be motivated to combine the claimed combinations with a reasonable expectation of success.").

31.    For an accused infringer "to establish obviousness, it is insufficient to allege a general motivation to discover an undefined solution that could take many possible forms." *In re Armodafinil Patent Litig. Inc.*, 939 F. Supp. 2d 456, 500 (D. Del. 2013).  This is because "knowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references to reach the particular claimed method." *Id.*  (quoting *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1362, 1373-74 (Fed. Cir. 2008)).  This motivation to combine must be demonstrated by clear and convincing evidence.  *See In re Cyclobenzaprine*, 676 F.3d at 1068-69.

32.    Further, in analyzing the motivation issue, the problem to be solved by a POSA is not the specific problem solved by the invention.  *See, e.g., Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 859-61 (Fed. Cir. 2015) ("[T]he problem faced by one skilled in the art was broader than merely seeking to use [a specific drug] to treat [a specific disease].").  This is because "[d]efining the problem in terms of its solution reveals improper hindsight in the selection of the prior art relevant to obviousness." *Id.* at 859.  Whether a POSA would narrow its research focus in selecting the relevant prior art depends on the facts.  *Id.* at 860.

33.    "The presence or absence of a reasonable expectation of success is ... a question of fact." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016). The reasonable-expectation-of-success analysis must be tied to the scope of the claimed invention. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 966 (Fed. Cir. 2014) ("[F]ailure to consider the appropriate scope of the ... claimed invention in evaluating the reasonable expectation of success ... constitutes a legal error ...."). Absolute predictability is not required. *See, e.g.*, *Pfizer*, 480 F.3d at 1364. But the reasonable-expectation-of-success requirement is not satisfied when the skilled artisan would have had no expectation of success. *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1356 (Fed. Cir. 2017).

34.    "When there is a high enough quantum of unpredictability – e.g., where the chance of failure is equal to the chance of success or where the prior art supports at best a cautious optimism that a particular course of action will work – the party that bears the burden of proving unpatentability may not have met its burden of showing a reasonable expectation of success." *Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc.*, 2020 WL 6809812 at *15-16 (2020); *see also Honeywell*, 865 F.3d at 1355 (finding that the Board "made what amounts to a finding that one of ordinary skill would not have had a reasonable expectation of success" when it found that "one of ordinary skill would no more have expected failure than success"); *Sanofi*, 875 F.3d at 647, 650 (rejecting argument that district court "appli[ed] too high a standard for proving a reasonable expectation of success," affirming the determination that a defendant failed to prove obviousness where a person of ordinary skill in the art "would have been at best cautiously optimistic that dronedarone could reduce the risk of cardiovascular hospitalization and hospitalization for AF in the ATHENA patient population").

35.     Whether a POSA would have had a reasonable expectation of success must be evaluated in light of the desired goal, not "a different goal that may be a less challenging but also less worthwhile pursuit." *Institut Pasteur v. Focarino*, 738 F.3d 1337, 1345-46 (Fed. Cir. 2013); *cf. Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1345 (Fed. Cir. 2000) (holding that an expectation of "baseline" activity for a drug was insufficient to show obviousness, because the claimed success was not the discovery of one of many compounds exhibiting such baseline activity, but rather "a compound that had high activity, few side effects, and lacked toxicity"). Further, the mere "knowledge of the goal does not render its achievement obvious." *Abbott Labs.*, 544 F.3d at 1352.

36.     Additionally, whether the POSA would have had a reasonable expectation of success in achieving the claimed solution must be assessed in light of the particular technology at issue, and Courts have often faulted patent challengers in the pharmaceutical arts for assuming relationships between pharmacokinetic, pharmacodynamic, and even clinical data when such relationships are unreported in the art. *See Abbott Labs.*, 544 F.3d at 1351-52; *see also In re Cyclobenzaprine*, 676 F.3d at 1070 (rejecting obviousness theory requiring POSA to assume that "the immediate-release and extended-release [pharmacokinetic] profiles produce the same [pharmacodynamic] effect" where no known pharmacokinetic-pharmacodynamic relationship existed).

37.     Indeed, "[a] solution is not obvious simply because it was obvious to conduct experiments to try to solve the problem." *Vanda Pharm., Inc. v. Roxane Labs., Inc.*, 203 F. Supp. 3d 412, 427 (D. Del. 2016), *aff'd*, 887 F.3d 1117 (Fed. Cir. 2018). "KSR did not create a presumption that all experimentation in fields where there is already a background of useful knowledge is 'obvious to try,' without considering the nature of the science or technology." *Abbott*

*Labs.*, 544 F.3d at 1349-50, 1352 (affirming the district court's rejection of an obviousness argument premised on prior art regarding a chemical compound different from the claimed compound because, inter alia, the properties of the prior art compound were "sufficiently dissimilar to or unpredictable from" the claimed compound).

38.     "Where . . . a defendant urges an obviousness finding by merely throwing metaphorical darts at a board in hopes of arriving at a successful result, but the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful, courts should reject hindsight claims of obviousness." *In re Cyclobenzaprine*, 676 F.3d at 1070-71 (citations and quotations omitted); *see also ViiV Healthcare UK Ltd. v. Lupin Ltd.*, 6 F. Supp. 3d 461, 504 (D. Del. 2013) (Andrews, J.,) (finding combination therapy of drugs previously known in the prior art nonobvious because "although the field generally accepted the premise that combination therapy was the future . . . no clear cut clinical benefit had been shown . . . ."). "Where researchers have to resort to a wide array of options and are required to select drugs randomly, it cannot be said that a finite number of identified, predictable solutions existed." *Id.* at 504 (quotations omitted).

39.     "[T]he Federal Circuit has clarified that obvious to try is also not obvious when a skilled artisan would have to: (1) vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful; or (2) explore new technology or general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it." *In re Armodafinil*, 939 F. Supp. 2d at 502 (internal quotations omitted).

40.    "Evidence of obviousness, especially when that evidence is proffered in support of an obvious-to-try theory, is insufficient unless it indicates that the possible options skilled artisans would have encountered were finite, small, or easily traversed, and that skilled artisans would have had a reason to select the route that produced the claimed invention." *Novartis Pharm. Corp.*, 48 F. Supp. 3d at 752-53 (internal quotations omitted); *accord St. Jude Medical, Inc. v. Access Closure, Inc.*, 729 F.3d 1369, 1381 (Fed. Cir. 2013) (holding that combination of references did not render claims obvious because "[o]ne of ordinary skill in the art at the time of the invention would have viewed the [two devices] as substitutes to achieve the same . . . objective, not as complementary devices to achieve the . . . benefit of [the] claimed invention.").

41.    The Federal Circuit has clarified that an invention was not obvious to try when, *inter alia*, a POSA would not have been motivated to pursue the known options, or prior art does not indicate a successful direction amongst a number of options. *Unigene Labs.*, 655 F.3d at 1361. As such, prior art cannot render a claim obvious if it is vague or does not collectively guide a POSA towards a particular solution. *Id.*

42.    When two references provide contradictory teachings, "such conflicting teachings cannot reasonably be viewed as suggesting their combination." *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1385 (Fed. Cir. 2001). Similarly, an "inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements." *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1306 (Fed. Cir. 2015) (quoting *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009).

43.    "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or

would be led in a direction divergent from the path that was taken by the applicant." *DePuy Spine, Inc.*, 567 F.3d at 1327. "[Or] if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) (citing *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994)).

44.    Prior art can also demonstrate the absence of a motivation to combine references or otherwise pursue a particular path. *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 n.15 (Fed. Cir. 2016) (*en banc*) ("[E]ven if [the reference] does not teach away, its statements regarding users preferring other forms of switches are relevant to a finding regarding whether a skilled artisan would be motivated to combine [the references]."); *see also Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1379-80 (Fed. Cir. 2017) ("[T]he absence of a formal teaching away in one reference does not automatically establish a motivation to combine it with another reference in the same field.").

45.    While the disclosure of a claimed range in the prior art may shift the burden to the patentee, in instances where "the disclosed ranges are so broad as to encompass a very large number of possible distinct compositions, such that they do not teach any specific amounts or combinations . . . the burden of producing evidence of teaching away, unexpected results, and other pertinent secondary considerations d[oes] not shift to [the patentee]." *Allergan, Inc.*, 796 F.3d at 1305 (internal citations and quotations omitted).

46.    Usually, "where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation." *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1006 (Fed. Cir. 2018) (quotation marks omitted). "A more specific application of this general principle is that a *prima facie* case of

obviousness typically exists when the ranges of a claimed composition overlap the ranges disclosed in the prior art." *Id.* (quotation marks and alterations omitted).

47.     The burden of persuasion always remains on the party challenging the validity of the patent. *In re Cyclobenzaprine*, 676 F.3d at 1075, 1078 (the district court erred in determining obviousness before considering objective indicia "and by shifting the burden of persuasion [to the patentee].")); *see also Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1353 (Fed. Cir. 2013) ("Obviousness must be proved by clear and convincing evidence.  The burden of proof lies with the challenger, and [the Federal Circuit] has rejected any formal burden-shifting framework in evaluating the four Graham factors.") (internal citations omitted).  Indeed, the Federal Circuit has discussed how the concept of "*prima facie*" case and burden-shifting in the context of litigating patent validity is inappropriate. *In re Cyclobenzaprine*, 676 F.3d at 1080 n.7 ("Courts should not apply the burden-shifting framework for patentability appeals to invalidity determinations appealed from a district court, however, because the prosecution and litigation contexts are distinct. . . . [I]n the litigation context, validity, rather than patentability, is the issue.  The challenged patent enjoys a presumption of validity, and the challenger must convince a third-party decision maker of the patent's invalidity by clear and convincing evidence.").

48.     Moreover, the Court must also consider any evidence presented concerning objective considerations of non-obviousness.  *Id.* at 1075 ("district court erred . . . by making its finding that the patents in suit were obvious before it considered the objective considerations and by shifting the burden of persuasion to [the patent holder]"); *see also Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012) ("district court made a clear error in not considering or making any findings as to [the patent holder's] evidence showing objective indicia of non-obviousness").

### B. <u>Objective Indicia of Nonobviousness</u>

49.    In determining whether an infringer has proven that an asserted claim is invalid for obviousness, the Court must consider any evidence presented concerning objective considerations of non-obviousness before a conclusion on obviousness is reached. *See In re Cyclobenzaprine*, 676 F.3d at 1075; *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir. 1986) ("Objective evidence... is not merely 'icing on the cake'"). "Evidence of secondary considerations may often be the most probative and cogent evidence in the record." *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1573 (Fed. Cir. 1992) (citation omitted). Evidence of objective indicia "is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness." *Ortho-McNeil*, 520 F.3d at 1365. Such indicia "constitute[] independent evidence of nonobviousness," and "can be the most probative evidence of nonobviousness in the record, and enables the court to avert the trap of hindsight." *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013).

50.    "For evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the *claimed invention*." *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) (quoting *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed.Cir.2010) (emphasis in original). "Whether a product is coextensive with the patented invention, and therefore whether a presumption of nexus is appropriate in a given case, is a question of fact." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019).

51.    "[T]here is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product is the invention disclosed and claimed in the patent." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016) (internal quotations and citations omitted).

52.     Nexus is appropriately presumed where the claims are directed to the active ingredient of the drug composition and its method of manufacture.  *Immunex Corporation v. Sandoz Inc.*, 964 F.3d 1049, 1067 (Fed. Cir. 2020) ("Nexus is appropriately presumed in this case where the court concluded that the claims are directed to the active ingredient in Enbrel® and its method of manufacture").  "More generally, it is hard not to imagine a presumption of nexus between a structurally claimed genus of chemical compounds and a commercial product that meets each claim limitation."  *Teva Pharmaceuticals International GmbH v. Eli Lilly and Company*, 8 F.4th 1349, 1360–63 (Fed. Cir. 2021).

53.     "[T]he mere existence of one or more unclaimed features does not necessarily mean presuming nexus is inappropriate."  *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1376 (Fed. Cir. 2019).  "[T]he concept of unclaimed features is best viewed as part of a spectrum.  Toward one end of the spectrum, we have said that 'if the unclaimed features amount to nothing more than additional insignificant features, presuming nexus may nevertheless be appropriate.'  Toward the other end of the spectrum, we have said that '[a] patent claim is not coextensive with a product that includes a 'critical' unclaimed feature that is claimed by a different patent and that materially impacts the product's functionality.'"  *Teva Pharmaceuticals International GmbH v. Eli Lilly and Company*, 8 F.4th 1349, 1360–63 (Fed. Cir. 2021) (quoting *Fox Factory*, 944 F.3d at 1376).

54.     The Court in *Teva* acknowledged that "virtually every innovative product inevitably has some unclaimed feature that materially affects its functionality….  For example, a claim to a new and unobvious pharmaceutical compound would surely have a nexus to the marketed finished product sold to consumers, although that finished product will almost always contain excipients such as solubilizers, antioxidants, stabilizers, etc., that materially affect its functionality.  Such excipients should not reasonably be found to destroy the nexus between the

claim and the product." *Teva Pharmaceuticals International GmbH v. Eli Lilly and Company*, 8 F.4th 1349, 1360–63 (Fed. Cir. 2021).

55.    Once a plaintiff produces evidence that the objective indicia have a nexus to the patented inventions, it is the defendants' burden to prove otherwise. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1393 (Fed. Cir. 1988). For example, a plaintiff is "not required to prove . . . that the commercial success of the patented invention is not due to factors other than the patented invention. It is sufficient to show that the commercial success was of the patented invention itself." *Id.* at 1394 (emphasis in original).

56.    Although objective indicia are probative of non-obviousness, an absence of objective indicia may not be relied upon by the accused infringer in asserting obviousness. *Custom Accessories, Inc. v. Jeffrey-Allan Indus.*, 807 F.2d 955, 960 (Fed. Cir. 1986).

57.    Regardless of whether a patentee introduces evidence of secondary considerations, the burden of persuasion always remains on the party challenging the validity of the patent. *See In re Cyclobenzaprine*, 676 F.3d at 1078 n.5; *see also Plantronics*, 724 F.3d at 1353 ("Obviousness must be proved by clear and convincing evidence. The burden of proof lies with the challenger, and [the Federal Circuit] has rejected any formal burden-shifting framework in evaluating the four *Graham* factors," i.e., including objective indicia of nonobviousness) (internal citations omitted); *Immunex Corp. v. Sandoz Inc.*, 395 F. Supp. 3d 366, 401 (D.N.J. 2019) ("While both parties offered evidence of objective indicia to support their positions, the burden always remains on Defendants to prove by clear and convincing evidence that the claimed invention is obvious"); *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 348 F. Supp. 2d 713, 748-49 (N.D.W. Va. 2004) ("the defendant bears the burden of proving each fact underlying an obviousness determination by clear and convincing evidence").

58.    Objective indicia of non-obviousness can include, among others: (1) unexpected results or properties of the claimed invention, (2) skepticism in the art, and (3) commercial success. *See Mintz*, 679 F.3d at 1379.

### i.    Unexpected Results

59.    Unexpected results are objective evidence of non-obviousness, and "are useful to show the improved properties provided by the claimed [product] are much greater than would have been predicted." *Leo Pharm.*, 726 F.3d at 1358.  In other words, "that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious." *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995).  "Unexpected results are shown in comparison to what was known, not what was unknown." *Millennium Pharm., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1368 (Fed. Cir. 2017). And the patent laws have long recognized that an "indirect showing of unexpected superiority will rebut" obviousness, *see, e.g.*, *In re Fenn*, 639 F.2d 762, 765 (C.C.P.A. 1981).

60.    A combination can be rendered nonobvious if variables interacted in an unexpected or unpredictable way. *Allergan*, 796 F.3d at 1306-07 (inventor's discovery that 200 ppm BAK enhanced the permeability of bimatoprost constituted an unexpected difference that supported non-obviousness when the prior art taught that 200 ppm BAK would either have no impact on the permeability of bimatoprost or decrease it).

61.    "[A]bsolute identity of scope" between the patent claim and evidence of unexpected results is not required. *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1308-09 (Fed. Cir. 2011).  Rather, the evidence cannot be "plainly disproportionate to the scope of the claims." *Id.*

62.     A showing of unexpected results can also be used to rebut a *prima facie* case of obviousness because "that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious." *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995).

63.     Unexpected results may be demonstrated by evidence that "the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected." *In re Soni*, 54 F.3d at 750.   In order to show unexpected results of the claimed invention, "a patent owner need not demonstrate that one of ordinary skill would have expected *failure*—rather, the patent owner need only establish that the results would have been *unexpected* to one of ordinary skill at the time of invention, or 'much greater than would have been predicted.'" *Honeywell*, 865 F.3d at 1356 (quoting *Leo Pharm.*, 726 F.3d at 1358) (emphasis in original).

64.     Evidence of unexpected results "applies most often to the less predictable fields, such as chemistry, where minor changes in a product or process may yield substantially different results." *In re Soni*, 54 F.3d at 750.   "Evidence that the variables interacted in an unpredictable or unexpected way could render the combination nonobvious." *Allergan, Inc.*, 796 F.3d at 1306-07 (citations and quotations omitted).

65.     Unexpected results may be shown by testing and analysis evidence generated after the filing of the patent application.   *See Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004) ("There is no requirement that an invention's properties and advantages were fully known before the patent application was filed, or that the patent application contains all of the work done in studying the invention, in order for that work to be introduced into evidence in response to litigation attack. Nor is it improper to conduct additional experiments and provide later-obtained data in support of patent validity.").

66.     Unexpected properties can include unexpectedly improved clinical properties. *See, e.g.*, *Eli Lilly & Co. v. Sicor Pharms., Inc.*, 705 F. Supp. 2d 971, 987-88 (S.D. Ind. 2010); *Janssen Prods., L.P. v. Lupin Ltd.*, 109 F. Supp. 3d 650, 691-92 (D.N.J. 2014); *In re Alfuzosin Hydrochloride Patent Litig.*, No. 08-1941, 2010 WL 1956287, at *7 (D. Del. May 14, 2010) ("the unexpected efficacy and pharmacology, and favorable side effect profile of alfuzosin in treating dysuria and dysuria of BPH," supported nonobviousness); *Orexo AB v. Actavis Elizabeth LLC*, 903 F.3d 1265, 1274 (Fed. Cir. 2018) (an increase of 66% in bioavailability of the patented product supported nonobviousness).

### ii.      Skepticism in the Art

67.     "Expressions of skepticism by those in the art are 'relevant and persuasive' evidence of nonobviousness. *Ortho-McNeil*, 348 F. Supp. 2d at 760. If a POSA is "skeptical about whether or how a problem could be solved or the workability of the claimed solution, it favors non-obviousness. Doubt or disbelief by skilled artisans regarding the likely success of a combination or solution weighs against the notion that one would combine elements in references to achieve the claimed invention." *WBIP*, 829 F.3d at 1335. Proceeding against accepted wisdom in the field that would discourage attempts to resolve an issue in the manner of the claimed invention as evidenced by prior art can be evidence of skepticism that supports nonobviousness. *Ortho-McNeil*, 348 F. Supp. 2d at 760. A wide range of third-party opinion, however, can constitute skepticism, and skepticism does not need to "be premised on whether it is 'technically infeasible,' 'unworkable,' or 'impossible,' that the claimed subject matter would work for its intended purpose." *Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1377-78 (Fed. Cir. 2019) (holding there was no error in the finding that skepticism supported a conclusion of nonobviousness when the FDA expressed concerns despite allowing the trial to continue).

### iii.    Commercial Success

68.    With respect to commercial success, "[t]he possibility of market success attendant upon the solution of an existing problem may induce innovators to attempt a solution. If in fact a product attains a high degree of commercial success, there is a basis for inferring that such attempts have been made and have failed." (Note, Subtests of 'Nonobviousness': A Nontechnical Approach to Patent Validity, 112 U. Pa. L. Rev. 1169, 1175 (1964) (cited by *Graham*, 383 U.S. 1, 17-18 (1966)).)

69.    Whether a commercial embodiment of the patented invention has been a commercial success is further evidence supporting nonobviousness. *Neupak, Inc. v. Ideal Mfg. & Sales Corp.*, 41 F. App'x 435, 440 (Fed. Cir. 2002). Indeed, "[c]ommercial success and industry praise are recognized evidence of nonobviousness, for the way persons in the field of an invention perceive its advantages 'may often be the most probative and cogent evidence in the record.'" *Oren Techs., LLC v. Proppant Express Invs. LLC*, No. 2019-1778, 2021 WL 3120819, *5-6 (Fed. Cir. July 23, 2021) (nonprecedential).

70.    "When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997). Commercial success is demonstrated by providing evidence of "some causal relation or 'nexus' between an invention and commercial success of a product embodying that invention." *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005). Evidence of commercial success may be relied upon to show nonobviousness "so long as what was sold was within the scope of the

claims." *In re Huai-Hung Kao*, 639 F.3d 1057, 1069 (Fed. Cir. 2011) (citations and internal quotations omitted).

71.     In determining whether a marketed product is commercially successful, courts look at the total sales of the product within the relevant market since its introduction to the market. *See Neupak*, 41 F. App'x at 440. Although sales figures alone can provide evidence of commercial success, such a showing may be further bolstered by showing sales figures coupled with market data, i.e., sales within the identified relevant market. *Id.*

72.     Commercial success may also be established with reference to such factors as revenue dollars and speed of growth. *See, e.g.*, *In re Alfuzosin*, 2010 WL 1956287, at *7 (commercial success where total sales of drug were $790 million after six years on market and growing). There is no requirement, however, that the invention "be the only successful product in its market niche or the most successful." *Takeda Chem. Indus., Ltd. v. Mylan Labs. Inc.*, 417 F. Supp. 2d 341, 386 (S.D.N.Y. 2006); *Tec Air*, 192 F.3d at 1360-61.

73.     Courts have acknowledged that profits are not traditionally considered reflective of commercial success due to the inherent issues with the profitability analysis. *See Daiichi Sankyo Co. v. Mylan Pharms. Inc.*, 670 F. Supp. 2d 359, 386 (D.N.J. 2009), *aff'd sub nom. Daiichi Sankyo Co. v. Matrix Lab'ys, Ltd.*, 619 F.3d 1346 (Fed. Cir. 2010) ("As an initial matter, profitability analysis has a number of issues with it ... it's subject to a lot of internal accounting conventions that are unique to a particular company. A comparison of profits with competing products is difficult, since [m]ost companies report profitability at a company level").

74.     "[W]hile evidence of profitability may be an indication of commercial success, the Court does not find that the analysis of profitability factors heavily into the commercial success analysis. In that connection, evidence of a product's sales and market share weighs more heavily

- 25 -

on whether the product is obvious in light of the prior art. That is because the question of profitability depends on a number of internal factors, rather than a comparison to other similar products." *Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*, 533 F.Supp.3d 170, 213-215 (D.N.J. 2021) (stating "For this reason, even if the Court were to consider the parties' positions with respect to profitability, I do not find the argument persuasive").

75.    Commercial success "may be linked to an individual element or, in other circumstances, it could be linked to the inventive combination of known elements." *WBIP*, 829 F.3d at 1329-32.  The law does not require that commercial success be due exclusively to the claimed elements, as opposed to other activities.  *See, e.g.*, *Intendis GmbH v. Glenmark Pharm. Ltd.*, 117 F. Supp. 3d 549, 593 (D. Del. 2015), *aff'd*, 822 F.3d 1355 (Fed. Cir. 2016) (commercial success supported a conclusion of nonobviousness because "even if [the product] is heavily marketed and sampling is a 'significant factor' driving prescriptions, defendants have not negated the possibility that the merits of the claimed composition also drive prescriptions and sales").  Nor is it necessary that commercial success be due solely to features not in the prior art.  *WBIP*, 829 F.3d at 1329-32.

76.    "[T]he mere existence or sheer number of blocking patents does not, without more, 'necessarily detract from evidence of commercial success of a product or process.'"  *Acorda Therapeutics, Inc. v. Roxane Lab'ys, Inc.*, 903 F.3d 1310, 1338 (Fed. Cir. 2018) (quoting *Merck Sharp & Dohme Corp. v. Hospira, Inc.*, 874 F.3d 724, 731 (Fed. Cir. 2017)).  When a blocking patent exists, "the magnitude of the diminution in incentive in any context—in particular, whether it was great enough to have actually deterred activity that otherwise would have occurred—is 'a fact-specific inquiry.'"  *Id.* (citing *Merck*, 874 F.3d at 731).  Confronted with a blocking patent that it does not own or hold a license to, a party may still consider obtaining a license, challenging

- 26 -

the blocking patent, or pursuing research without a license, including under the safe harbor provided by 35 U.S.C. § 271(e)(1). *Id.* Other factors, such as the costliness of pursuing research related to the invention covered by the blocking patent, the risk of research failure, and other research and investment opportunities, also weigh in the analysis of any effect a blocking patent may have. *Id.*

C.    **§ 112 – Written Description**

77.    The written description requirement is contained within 35 U.S.C. § 112, which provides: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

78.    Pursuant to 35 U.S.C. § 282 and § 112(a), a patent specification is presumed to contain an adequate written description for the claimed invention. A party asserting invalidity for lack of written description must prove, by clear and convincing evidence, that the specification fails to "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Vanda Pharm., Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1136 (Fed. Cir. 2018).

79.    Compliance with the written description requirement is a factual inquiry undertaken from the objective standpoint of a person of ordinary skill in the art. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005). "[I]nvalidating a claim requires a showing by clear and convincing evidence that the written description requirement has not been satisfied." *Id.* "The invention is, for purposes of the written description inquiry, whatever is now claimed." *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1373 (Fed. Cir. 2024).

80.    A patent claim "need not provide *in haec verba* support for the claimed subject matter at issue" to satisfy the written description requirement. *Lampi Corp. v. American Power Prods., Inc.*, 228 F.3d 1365, 1378 (Fed. Cir. 2000).  Rather, the written description requirement is satisfied if "the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010); *see also Streck, Inc. v. Research & Diagnostics Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-34 (Fed. Cir. 1991).

81.    The claims included in the originally filed patent application from which the asserted patent claims priority are part of the specification for purposes of satisfying the written description requirement. *See, e.g., Crown Packaging*, 635 F.3d at 1380; *Allergan*, 111 F.4th at 1374; *In re Gardner*, 480 F.2d 879, 879 (C.C.P.A. 1973).  Where the originally filed claims disclose a formulation without specific limitations, "[i]t therefore cannot be… that the inventors did not have possession of a formulation in which a [specific limitation] was not required.  They did have such possession as they disclosed it in an original claim, whether that claim remained or not." *Allergan*, 111 F.4th at 1374.

82.    An inventor need not have actually reduced to practice all embodiments of the claimed invention to satisfy the written description requirement. *See Streck*, 665 F.3d at 1286.

83.    "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology.  For generic claims, we have set forth a number of factors for evaluating the adequacy of the disclosure, including the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and the predictability of the

aspect at issue." *Ariad Pharm., Inc.*, 598 F.3d at 1351 (internal citations and quotations omitted); *see also Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1368 (Fed. Cir. 2006) ("The written description requirement states that the patentee must describe the invention. . . . [T]he forced recitation of known sequences in patent disclosures would only add unnecessary bulk to the specification.") (internal citations and quotations omitted).

84.     The "disclosure of a species may be sufficient written description support for a later claimed genus including that species." *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124 (Fed. Cir. 2004). "There is no special rule for supporting a genus by the disclosure of a species; so long as disclosure of the species is sufficient to convey to one skilled in the art that the inventor possessed the subject matter of the genus, the genus will be supported by an adequate written description." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1352 (Fed. Cir. 2011).

85.     The written description requirement does not require that the patentee to "describe in the specification every conceivable and possible future embodiment of his invention." *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003) (internal quotation omitted).

86.     A patentee may rely on information that is well known in the art for purposes of meeting the written description requirement. *See Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011); *S3 Inc. v. nVidia Corp.*, 259 F.3d 1364, 1371 (Fed. Cir. 2001).

87.     "A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005); *see also Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1371 (Fed. Cir. 2009) ("[A] patent claim is not necessarily invalid for lack of written description just because it is broader

than the specific examples disclosed.").  Similarly, even if "the specification does largely focus on more detailed formulations that include a [specific limitation]…, those disclosures, as the district court correctly understood, do not limit the scope of the invention."  *Allergan*, 111 F.4th at 1374; *see also ScriptPro LLC*, 833 F.3d at 1341 ("[A] specification's focus on one particular embodiment or purpose cannot limit the described invention where that specification expressly contemplates other embodiments or purposes.").  Furthermore, "[t]he very fact that a [specific limitation] is not necessarily present in every embodiment indicates that it is optional, regardless whether the inventors expressly described it as 'optional.'"  *Allergan*, 111 F.4th at 1375.

88.    "[T]he ranges in applicant's claims need not correspond exactly to those disclosed in the parent application. . . .  Rather, this court clarified that the issue is whether one of skill in the art could derive the claimed ranges from the parent's disclosure."  *Union Oil Co. of Cal. v. Atlantic Richfield Co.*, 208 F.3d 989, 1001 (Fed. Cir. 2000) (citations omitted) (rejecting lack of written description argument premised on the specification not describing "the exact chemical component of each combination that falls within the range claims of the [asserted] patent" because "neither the Patent Act nor the case law of this court requires such detailed disclosure"); *see also Allergan, Inc. v. Watson Labs., Inc.-FL*, 869 F. Supp. 2d 456, 498-99 (D. Del. 2012) (concluding that a claim was not invalid for lack of written description despite including a specific range limitation that did not correspond exactly to the ranges found the specification because "a person of skill in the art could have determined, based on the specification, 'what the patentee intended'").

89.    Under section 112, "[o]pen-ended claims are not inherently improper. . . .  They may be supported if there is an inherent, albeit not precisely known . . . limit and the specification enables one of skill in the art to approach that limit."  *Andersen Corp. v. Fiber Composites, LLC*,

474 F.3d 1361, 1376-77 (Fed. Cir. 2007) (quoting *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1572 (Fed. Cir. 1991)).

90.     The statement that a claim element "is selected from" a list of particular embodiments may limit a claim to the listed embodiments if it appears in a patent claim but does not have the same limiting effect when it appears in a patent specification. *See Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1208-11 (Fed. Cir. 2007). Under the doctrine of claim differentiation, a claim element in an independent claim should be construed to encompass more than the specific embodiments of that claim element as set forth in a dependent claim. *Id.* at 1209.

91.     "Whether a claimed invention would 'work,' or whether it is operable, goes more directly to the utility requirement or the enablement requirement, not the written description requirement." *Allergan*, 111 F.4th at 1376. "[A] claimed invention need successfully operate only to some limited degree [and] need not be the best or the only way to accomplish a certain result, and it need only be useful to some extent and in certain applications." *Id.*

### D.     § 112 – Indefiniteness

92.     Under 35 U.S.C. § 112(b), a claim is valid unless the infringer proves that the claim, when read in light of the patent's specification and prosecution history, fails to inform "with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2124 (2014). Absolute precision is not required, only that the claims inform a POSA as to the invention's scope with reasonable certainty. *Id.* at 2129.

93.     A party asserting invalidity for purported indefiniteness bears the burden of proof by clear and convincing evidence. *Id.* at 2130 n.10; *see also Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015); *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1062 (Fed. Cir. 2017) ("We presume that patents are valid, so any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." (citation

and internal quotation marks omitted) (alteration in original)). This inquiry "trains on the understanding of a skilled artisan at the time of the patent application." *Nautilus*, 134 S.Ct. at 2128.

94. Whether a POSA would understand the scope of a certain claim term is a question of fact dependent on context, and the Federal Circuit has found extrinsic evidence such as expert testimony appropriate as part of this analysis. *Eli Lilly*, 845 F.3d at 1370-71 (affirming the district court's finding that the claims were definite, where the district court relied on expert testimony to determine how a POSA would understand a claim term in the context of the patent claims).

95. "[T]he certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Nautilus*, 134 S.Ct. at 2127 (citation and internal quotation marks omitted) (emphasis added). "[A] claim is not indefinite if a person of skill in the art would know how to utilize a standard measurement method . . . to make the necessary measurement," and "[a] patent need not explicitly include information that is already well known in the art." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1376 (Fed. Cir. 2017) (citation omitted). "Reasonable certainty" does not require absolute or mathematical precision. *Nautilus*, 134 S.Ct. at 2127; *see Presidio*, 875 F.3d at 1375 ("The definiteness requirement 'mandates clarity, while recognizing that absolute precision is unattainable.'"). Potential variability within a limitation does not itself render a claim indefinite, as "[d]efiniteness does not require that a potential infringer be able to determine ex ante if a particular act infringes the claims." *Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 39-40 (Fed. Cir. 2020) ("That a given signal will eliminate paresthesia in some patients, but not others, does not render the claims [reciting a system for generating a paresthesia-free signal] indefinite.").

96.     The POSA's understanding of the claim language comes from the knowledge of the POSA bolstered by the reading of the patent specification and prosecution history.  *See, e.g.*, *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1290-94 (Fed. Cir. 2017) (relying on the patent specification to determine whether a claim was definite); *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377-80 (Fed. Cir. 2017) (using the specification and prosecution history to determine a claim was not indefinite); *All Dental Prodx, LLC v. Advantage Dental Products*, Inc., 309 F.3d 774, 779–80 (Fed. Cir. 2002) ("The prosecution history can thus be relied upon to clarify the claim meaning and hence provide definiteness.").

97.     The Examiner at the U.S. Patent and Trademark Office ("PTO") is under specific and detailed instructions to review claim language for definiteness.  *See* Manual of Patent Examining Procedure ("MPEP")11 § 2173 ("It is of utmost importance that patents issue with definite claims that clearly and precisely inform persons skilled in the art of the boundaries of protected subject matter.  Therefore, claims that do not meet this standard must be rejected . . . as indefinite.").

98.     Further, a POSA would have had knowledge of how pharmacokinetic studies are designed and conducted in accordance with good clinical practice.  *See, e.g.*, *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 718 (Fed. Cir. 1998) ("[I]t is quite sensible to look to the FDA to determine what amounts are considered pharmaceutically effective.").  Thus, a claim is not indefinite where there is "an objective baseline through which to interpret the claims." *Sonix*, 844 F.3d at 1378.

99.     Even if there were multiple linguistically permissible readings of a term, the one that a POSA would adopt based on the POSA's knowledge and experience would be the correct reading. *Cf. OSRAM GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1357 (Fed. Cir. 2007) ("When

there is more than one method of measurement and the patent does not explicitly discuss the methods, persons experienced in the field are reasonably deemed to select the method that better measures the parameters relevant to the invention. . . . [W]hen a person of ordinary skill would recognize which measurement is appropriate to the invention, that is the measurement that applies." (citation omitted)).  The correct approach in understanding claims in general is how a POSA would read the claims in view of their expertise, and, for definiteness, whether a POSA reasonably could read the claims in multiple different ways.  *See Nautilus*, 134 S.Ct. at 2127-29; *see, e.g.*, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259-61 (Fed. Cir. 2014) (claim term at issue, "visually perceptible elements," i.e., "'look and feel' elements that can be seen," not indefinite according to the established meaning of "look and feel" in the industry); *Mentor*, 851 F.3d at 1291-94 (claim term at issue, "near," not indefinite, where a POSA would have understood the term in a way that would accomplish the goal of the patent at issue).

100.    An express antecedent basis is not required for a claim to remain definite.  *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (stating "well-settled rule that claims are not necessarily invalid for a lack of antecedent basis"); *see also Tarkus Imaging, Inc. v. Adobe Sys.*, No. 10-63-LPS, 2012 WL 2175788, at *5 (D. Del. June 14, 2012) (J. Stark) ("[T]he failure to provide explicit antecedent basis for terms does not always render a claim indefinite . . . if the scope of a claim would be reasonably ascertainable by those skilled in the art.").

### E.    § 112 – Enablement

101.    Pursuant to 35 U.S.C. § 282 and § 112(a), a patent specification is presumed to sufficiently enable the subject matter of the claimed invention.  A party asserting invalidity for lack of enablement must prove, by clear and convincing evidence, that the specification fails to teach a POSA how to make and use the claimed invention without undue experimentation, as of

the filing date sought.  *See In re Wands*, 858 F.2d 731, 735-37 (Fed. Cir. 1988).  Factors to consider in determining whether a disclosure would require undue experimentation include:  "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims."  *In re Wands*, 858 F.2d at 737.

102.    Further, since the patent specification is directed to one of skill in the art, "a patent need not teach, and preferably omits, what is well known in the art."  *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986); *see also Pfizer Inc. v. Teva Pharm. USA, Inc.*, 555 F. App'x 961, 966-67 (Fed. Cir. 2014) (rejecting accused infringers' contention that the specification had to describe how to make each species in a genus to satisfy enablement).

103.    Again, the Examiner at the PTO is expected to review claim language for compliance with the enablement requirement.  MPEP § 2164 ("In other words, the examiner should always look for enabled, allowable subject matter and communicate to applicant what that subject matter is at the earliest point possible in the prosecution of the application.").

## III.    **REMEDIES**

104.    Defendants cannot prove, by clear and convincing evidence, that the Asserted Claims would have been (1) invalid as obvious over the prior art under pre-AIA 35 U.S.C. § 103 or (2) invalid under pre-AIA 35 U.S.C. § 112 at the time of the invention.  If the product that the ANDA applicants are likely to market would infringe a valid patent claim, then the "patent owner is entitled to an order that FDA approval of the ANDA containing the paragraph IV certification not be effective until the patent expires."  *Bristol-Myers Squibb Co. v. Royce Labs., Inc.*, 69 F.3d 1130, 1135 (Fed. Cir. 1995); 35 U.S.C. § 271(e)(4)(A).

105.    As such, Plaintiff is entitled to an Order pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of Defendants' ANDAs be a date that is not earlier than the expiration of the respective patents-in-suit upon which they infringe, including any patent term extension, patent term adjustment, or period of regulatory exclusivity associated with the patents-in-suit to which Plaintiff is or becomes entitled.

106.    Plaintiff is entitled to an immediate and permanent injunction restraining and enjoining Defendants from engaging in the commercial manufacture, use, offer for sale, or sale of the proposed generic products identified in Defendants' ANDAs within the United States, or importation of that product into the United States, during the term of the respective patents-in-suit upon which they infringe, including any patent term extension, patent term adjustment, or period of regulatory exclusivity associated with the patents-in-suit to which Plaintiff is or becomes entitled.

107.    Plaintiff is also entitled to attorney fees in this action as an exceptional case pursuant to 35 U.S.C. § 285.  Under 35 U.S.C. § 285, the prevailing party in "exceptional" patent cases may be awarded reasonable attorney fees.  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Under this standard, "sanctionable conduct is not the appropriate benchmark." *Id.* at 555. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion." *Id.* at 554.

108.    The Hatch-Waxman Act imposes a duty of care on an ANDA certifier, and an infringer's use of hindsight and non-prior art information to make out a case of obviousness has

resulted in findings of exceptional case. *Yamanouchi*, 231 F.3d at 1345-47 (affirmed exceptional case finding where infringer fell "far short of satisfying its burden" by putting forth arguments having "all the earmarks of somebody looking at this from hindsight"); *Takeda Chem. Indus. v Mylan Labs., Inc.*, 549 F.3d 1381, 1386-88 (Fed. Cir. 2008) (affirmed exceptional case finding where infringer failed to meet its duty of care by filing "baseless certifications").