**THE UNITED STATES DISTRICT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ACADIA PHARMACEUTICALS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:22-cv-01387-GBW |
| | ) | (Consolidated; Lead Case) |
| AUROBINDO PHARMA LIMITED, et al. | ) | **PUBLIC VERSION FILED** |
| | ) | **NOVEMBER 14, 2024** |
| Defendants. | ) | |
| | ) | |
| | ) | |

**EXHIBIT 5**

<u>**DEFENDANTS MSN AND AUROBINDO'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**</u>

Pursuant to Delaware Local Rule 16(c)(5), Defendants MSN Laboratories Private Limited and MSN Pharmaceuticals, Inc. (together "MSN"), Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. ("Aurobindo") (collectively, "Defendants"), submit the following statement of issues of law that remain to be litigated.

This statement is based on the current status of the case and Court's rulings to date. Defendants reserve the right to revise, amend, supplement, or modify the following statement based on any pretrial ruling by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending motions, and similar developments.

## I.    NON-INFRINGEMENT OF THE ASSERTED PATENT

### A.    Issues

1.      Whether Plaintiff Acadia Pharmaceuticals, Inc ("Acadia")has proven by a preponderance of the evidence that, if MSN's Abbreviated New Drug Application ("ANDA") is approved, claims 1-7 and 9-13 of the '721 patent will be infringed.

2.      Whether Plaintiff Acadia has proven by a preponderance of the evidence that, if Aurobindo's ANDA is approved, claims 1-7 and 9-13 will be infringed.

### B.    Applicable Law

3.      "The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence," and cannot shift this burden to the defendant. *Takeda Pharm. Co. Ltd. v. Teva Pharm. USA*, Inc., 668 F.Supp. 2d 614, 619 (D. Del. 2009); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008); *see also Vanda*

*Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1125 (Fed. Cir. 2018) ("The patentee bears the burden of proving infringement by a preponderance of the evidence.").

4.      An invalid claim is incapable of being infringed, as there is nothing to infringe. *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983).

5.      In the context of pharmaceutical litigation, it is an act of infringement under 35 U.S.C. § 271(e)(2)(A) to submit an abbreviated new drug application under Section 505(j) of the Federal Food, Drug, and Cosmetic Act for a drug that is claimed in a patent, or the use of which is claimed in a patent, in order to obtain approval to engage in the manufacture, use, or sale of the drug before the expiration of such patent(s). This act of infringement is "artificial" and necessary to establish jurisdiction over any disputes before the application is submitted or the proposed product marketed, and therefore enable the resolution of any such disputes. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003).

6.      "Once jurisdiction is established, however, the substantive determination whether actual infringement or inducement will take place is determined by traditional patent infringement analysis, just the same as it is in other infringement suits, including those in a non-ANDA context, the only difference being that the inquiries now are hypothetical because the allegedly infringing product has not yet been marketed." *Id.* "The infringement case is therefore limited to an analysis of whether that the generic drug maker is requesting authorization for in the ANDA would be an act of infringement if performed." *Id.* at 1364.

7.      In the context of an allegation of infringement under 35 U.S.C. § 271(e)(2), which is premised on an artificial act of infringement (i.e., the filing of the ANDA), the infringement inquiry is hypothetical and requires the court to compare the claims with the product described in the ANDA. *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1248-49 (Fed. Cir. 2000).

However, a patentee cannot rely solely on the filing of an ANDA under § 271(e)(2)(A) to establish infringement: "[T]he patentee's burden of proving ultimate infringement is not met by the filing of the ANDA." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1570 (Fed. Cir. 1997). The burden of proof does not shift to the ANDA filer merely by the filing of the ANDA. *Id.* ("The relevant inquiry is whether the patentee has proven by a preponderance of the evidence that the alleged infringer will likely market an infringing product."). *Id.*

8.      Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

9.      Determining direct infringement requires a two-step inquiry. Step one is to construe the disputed terms of the patent at issue; step two is to compare the accused product with the properly construed claims of the patent. *Alza Corp. v. Andrx Pharms., LLC*, 607 F. Supp. 2d 614, 623 (D. Del. 2009). Step one is a question of law; step two is a question of fact. *Id.*; *see also Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009).

10.      "Infringement may be proven under either of two theories: literal infringement or the doctrine of equivalents." *Alza*, 607 F. Supp. 2d at 623. "Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product… with a commercialized embodiment of the patentee." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1327-28 (Fed. Cir. 2007).

11.      "Literal infringement occurs when each element of at least one claim of the patent is found in the alleged infringer's product." *Alza*, 607 F. Supp. 2d at 623 (citing *Panduit Corp. v. Dennison Mfg. Co., Inc.*, 836 F.2d 1329, 1330 (Fed. Cir. 1987)); *see also DeMarini Sports,*

*Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001). "If, however, even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005); *see also Bayer*, 212 F.3d at 1247 ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."); *Glaxo, Inc.*, 110 F.3d at 1566 ("It is elementary patent law that all limitations are material[,]" and plaintiffs are "required to establish the presence of each limitation of the asserted claims."). Similarly, if there is any deviation from any claim limitation, there can be no literal infringement as a matter of law. *See, e.g.*, *DeMarini Sports*, 239 F.3d at 1331; *Wavetronix*, 573 F.3d at 1359.

12.     Infringement under the doctrine of equivalents must be undertaken on a claim-by-claim basis. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.").

13.     "The primary test for equivalency is the 'function-way-result' or 'triple identity' test, whereby the patentee may show an equivalent when the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result, as disclosed in the claim." *Abbott Lab'ys. v. Sandoz, Inc.*, 566 F.3d 1282, 1296-97 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). "Equivalency may also be proven where the differences between the invention as claimed and the accused product or process are insubstantial." *Id.* at 1297. The doctrine of equivalents cannot "render[] a claim limitation inconsequential or ineffective" thereby vitiating the claim limitation. *Enzo Biochem Inc. v. Applera Corp.*, 702 F. App'x 971, 976 (Fed. Cir. 2017).

14.    "[B]ioequivalency and equivalent infringement are different inquiries." *Abbott Lab'ys.*, 566 F.3d at 1298. "[W]hile potentially relevant, the bioequivalency of an accused product with a product produced from the patent at issue is not sufficient to establish infringement by equivalents." *Id.* "Bioequivalency is a regulatory and medical concern aimed at establishing that two compounds are effectively the same for pharmaceutical purposes. In contrast, equivalency for purposes of patent infringement requires an element-by-element comparison of the patent claim and the accused product, requiring not only equivalent function but also equivalent way and result." *Id.* Thus, "[d]ifferent attributes of a given product may thus be relevant to bioequivalency but not equivalent infringement, and vice versa." *Id.*

15.    Indirect infringement "can be found in cases where the defendant 'actively induces' another to infringe or in cases where a 'contributory infringer' sells 'a material . . . for use in practicing a patented process.'" *H. Lundbeck A/S v. Lupin Ltd.*, 87 F.4th 1361, 1365 (Fed. Cir. 2023) (quoting 35 U.S.C. § 271(b)-(c)).

16.    "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In order to prevail on an inducement claim, the patentee must establish first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (internal quotation marks omitted).

17.    "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). "[S]pecific intent may be inferred from circumstantial evidence where a defendant has both knowledge of

the patent and specific intent to cause the acts constituting infringement." *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008). "[L]iability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 640 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 764-65 (2011)).

## II.    <u>INVALIDITY</u>

### A.    <u>Issues</u>

18.    Whether claims 1-7 and 9-13 of the '721 patent are invalid under 35 U.S.C. § 103.

19.    Whether claims 1-7 and 9-13 of the '721 patent are invalid under 35 U.S.C. § 112 for lack of written description.

20.    Whether claims 1-7 and 9-13 of the '721 patent are invalid under 35 U.S.C. § 112 for lack of enablement.

21.    Whether claims 1-7 and 9-13 of the '721 patent are invalid under 35 U.S.C. § 112 for indefiniteness.

### B.    <u>Applicable Law</u>

22.    Federal Circuit precedent governs matters of substantive patent law in this Court. The Federal Circuit has adopted the decisions of the C.C.P.A. as its own precedent, making those decisions binding on this Court. *S. Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

23.    Patent invalidity is a complete defense to a charge of infringement. *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004); *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1323 (Fed. Cir. 2001); *Weatherchem Corp. v. J.L. Clark, Inc.*,

163 F.3d 1326, 1335 (Fed. Cir. 1998) ("[I]nvalidity operates as a complete defense to infringement for any product, forever…"). A patent is invalid if it fails to satisfy any of the conditions for patentability found in 35 U.S.C. § 101 *et seq.*

24.    A patent issued by the United States Patent and Trademark Office ("PTO") is presumed to be valid. 35 U.S.C. § 282(a). "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* Because of this presumption, invalidity must be established by facts supported by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110-14 (2011); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984), *abrogated on other grounds by Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011).

25.    However, the presumption of validity is "far from determinative," and a trial court is free to consider the evidence and decide the issue differently than the PTO. *See AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1245 (Fed. Cir. 2003).

26.    The fact that a reference was previously considered by the PTO merely goes to the weight of that reference's evidence and does not increase the burden of proof or preclude a finding of invalidity. *See Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259-60 (Fed. Cir. 2012).

27.    ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence ." (citing *Microsoft Corp.*, 564 U.S. at 108-09)). Evidence supporting an invalidity defense that was not considered by the examiner may carry more weight than evidence previously considered by the PTO. *Microsoft Corp.*, 564 U.S. at 110-14. "'[I]f the PTO did not have all material facts before it, its considered judgment may lose significant force' and the burden to persuade the finder of fact by clear and convincing

evidence may, therefore, 'be easier to sustain.'" *Sciele Pharma Inc.*, 684 F.3d at 1260 (quoting *Microsoft Corp.*, 564 U.S. at 111). In other words, a finding of invalidity may be appropriate where the reference was considered by the PTO, but the examiner failed to give proper consideration to the teachings of that reference. *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007).

28.     A court is not bound by the events in the PTO or by the PTO's decisions made during prosecution of patent. *See Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1096 (Fed. Cir. 1985), *vacated on other grounds*, 475 U.S. 809 (1986). Accordingly, the burden of proving invalidity by clear and convincing evidence may still be carried when the prior art was before the PTO. *See Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360-61 (Fed. Cir. 1998) (invalidating claims in view of an article that disclosed each of the claimed limitations, even though the anticipating article had been considered by the PTO and the patent allowed in view of the article); *Sciele Pharma Inc.*, 684 F.3d at 1259-60 ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence."); *Surface Tech., Inc. v. U.S. Int'l Trade Comm'n*, 801 F.2d 1336, 1340-41 (Fed. Cir. 1986); *PharmaStem Therapeutics, Inc.*, 491 F.3d at 1366-67. "The burden does not suddenly change to something higher— 'extremely clear and convincing evidence' or 'crystal clear and convincing evidence'—simply because the prior art references were considered by the PTO." *Sciele Pharma Inc.*, 684 F.3d at 1260. "In short, there is no heightened or added burden that applies to invalidity defenses that are based upon references that were before the Patent Office." *Id.*

1.     Obviousness

a.     Legal Standard

29.     The determination of obviousness under § 103(a) is a question of law based on underlying facts. *Bayer Schering Pharma AG v. Barr Lab'ys., Inc.*, 575 F.3d 1341, 1346 (Fed. Cir. 2009).

b.     General Principles

30.     "Section 103(a) forbids issuance of a patent 'when the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art [("POSA")] to which said subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,     40 (2007); *see also* 35 U.S.C. § 103.

31.     Obviousness is a question of law based on underlying facts including: (1) the scope and content of the prior art, (2) the level of ordinary skill in the pertinent art, (3) the differences between the prior art and the claims at issue, and (4) secondary considerations. *Prometheus Lab'ys., Inc. v. Roxane Lab'ys., Inc.*, 805 F.3d 1092, 1097-98 (Fed. Cir. 2015); *Bayer*, 575 F.3d at 1346-47. Based on these factual inquiries, the Court must determine, as a matter of law, whether or not the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the alleged invention was made. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966); *see also KSR Int'l*, 550 U.S. at 406. "[A]dvances that would occur in the ordinary course without real innovation" are not deserving of a patent. *KSR Int'l*, 550 U.S. at 419.

32.     The clear and convincing evidence standard for the obviousness determination does not apply to the "ultimate legal conclusion of obviousness itself," but only to the disputed facts underlying the conclusion of obviousness. *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 767 (Fed. Cir. 1988); *see also Microsoft Corp.*, 564 U.S. at 95, 114.

33.     The Supreme Court has "set forth an expansive and flexible approach" to obviousness. *KSR Int'l*, 550 U.S. at 415. The Supreme Court has emphasized that an obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418. The Federal Circuit has stated that it "cannot, in the face of *KSR*, cling to formalistic rules for obviousness, customize its legal tests for specific scientific fields in ways that deem entire classes of prior art teaching irrelevant, or discount the significant abilities of artisans or ordinary skill in an advanced area of art." *In re Kubin*, 561 F.3d 1351, 1360-61 (Fed. Cir. 2009) (citing *In re Durden*, 763 F.2d 1406, 1411 (Fed. Cir. 1985)).

34.     "[I]nherency may supply a missing claim limitation in an obviousness analysis." *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194-95 (Fed. Cir. 2014); *see also Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1294 n.1 (Fed. Cir. 2013). An element is inherent for purposes of the obviousness analysis "when the limitation at issue is the 'natural result' of the combination of prior art elements." *Par*, 773 F.3d at 1195; *see also In re Huai-Hung Kao*, 639 F.3d 1057, 1070 (Fed. Cir. 2011) (finding that a "claimed 'food effect' [wa]s an inherent property" of the formulation covered by the asserted patent such that the claim element "add[ed] nothing of patentable consequence," and affirming obviousness where prior art reference did not teach the inherent element); *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1354 (Fed. Cir. 2012) ("[A]n obvious formulation cannot become nonobvious simply by administering it to a patient  and claiming the resulting serum concentrations. To hold otherwise would allow any formulation—no matter how obvious—to become patentable merely by testing and claiming an inherent property."); *Alcon Rsch., Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1369 (Fed. Cir. 2012)

(inherency appropriate in obviousness context where it concerns a "property that is necessarily present"); *In re Kubin*, 561 F.3d at 1357 ("Even if no prior art of record explicitly discusses the [limitation], the… application itself instructs that [the limitation] is not an additional requirement imposed by the claims on the [claimed invention], but rather a property necessarily present in [the claimed invention].").

35.    "[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation." *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1006 (Fed. Cir. 2018) (quoting *In re Aller*, 220 F.2d 454, 456 (C.C.P.A. 1955)).

36.    The optimization of a range or variable flows from the "normal desire of scientists or artisans to improve upon what is already generally known." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1368 (Fed. Cir. 2007) (internal quotations omitted). Discovery of an optimum value of a variable in a known process is "usually obvious." *Id.*

c.    Scope and Content of the Prior Art

37.    The scope of the prior art includes art that is "reasonably pertinent to the particular problem with which the inventor was involved." *In re GPAC Inc.*, 57 F.3d 1573, 1577 (Fed. Cir. 1995). In determining whether the claimed invention falls within the scope of the relevant prior art, a court first examines, "the field of the inventor's endeavor" and "the particular problem with which the inventor was involved" at the time the invention was made. *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1339 (Fed. Cir. 2005). "A reference is reasonably pertinent if, even though it may be in a different field of endeavor, it is one which, because of the matter which it deals, logically would have commended itself to an inventor's attention in considering his problem." *Id.*

38.     Prior art references in an obviousness analysis are considered as a whole and not limited to the particular invention it describes. *See, e.g.*, *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1076 (Fed. Cir. 2015) (citing *EWP Corp. v. Reliance Universal, Inc.*, 755 F.2d 898, 907 (Fed. Cir. 1985) ("A reference must be considered for everything it *teaches* by way of technology and is not limited to the particular *invention* it is describing and attempting to protect."). This is also true even if a particular embodiment of the invention is not the preferred embodiment. *See, e.g.*, *In re Arora*, 369 F. App'x 120, 122 (Fed. Cir. 2010) ("Dr. Arora argues that Andersson should be understood as limited to the narrow teaching that a smaller amount of a drug is needed when delivered via Andersson's inventive dry powder inhaler instead of a metered dose inhaler. It is well-settled, however, that a prior art reference must be considered for all that it teaches to [POSAs], not just the embodiments disclosed therein. Andersson teaches the broad principle that different drugs are equipotent at different dosages, and even provides an example of that principle."); *Purdue Pharma Prods., L.P. v. Par Pharm., Inc.*, Nos. 2009-1553, 2009-1592, 377 F. App'x 978, 982 (Fed. Cir. 2010) ("[Prior art reference] renders the selection of tramadol obvious regardless whether or not the patent lists tramadol as a preferred embodiment.").

39.     Prior art references may be combined with the knowledge and/or experience of a POSA to "fill in the gap when limitations of the claimed invention are not specifically found in the prior art." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 563 (D. Del. 2011) (citing *Purdue Pharma Prods. L.P. v. Par Pharm., Inc.*, 642 F. Supp. 2d 329, 373 (D. Del. 2009); *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) ("[T]he knowledge of such an artisan is part of the store of public knowledge that must be consulted when considering whether a claimed invention would have been obvious.").

40.     "What a reference teaches a [POSA] is not… limited to what a reference specifically 'talks about' or what is specifically 'mentioned' or 'written' in the reference." *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1380 (Fed. Cir. 2005).

41.     Also, a determination that a claimed invention would be obvious, therefore "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a [POSA] would employ." *KSR Int'l*, 550 U.S. at 418.

### d.     Person of Ordinary Skill in the Art

42.     The person of ordinary skill in the art is a hypothetical person presumed to know all of the teachings of the prior art references in the field of the invention at the time the invention was made. *See Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984).

43.     In determining the level of ordinary skill in the art, a court should consider the following factors: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007). However, "[n]ot all [of the factors listed above] may be present in every case, and one or more of these or other factors may predominate in a particular case." *Imperial Chem. Indus., PLC v. Danbury Pharmacal, Inc.*, 777 F. Supp. 330, 371 (D. Del. 1991) (citing *Env't Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696-97 (Fed. Cir. 1983)).

44.     The actual inventor's skill or knowledge is not relevant. *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

### e.     Differences Between the Claimed Invention and the Prior Art

45. In determining the differences between the claimed invention and the prior art, obviousness is judged under "an expansive and flexible approach" driven by "common sense." *KSR Int'l*, 550 U.S. at 401, 403; *accord Senju Pharm. Co. Ltd. v. Apotex Inc.*, 836 F. Supp. 2d 196, 208 (D. Del. 2011) ("The Supreme Court has emphasized the need for courts to value 'common sense' over 'rigid preventative rules.'").

46. The Federal Circuit has emphasized that weight should be given to what the POSA would have deduced from what references fairly suggest using ordinary creativity and has cautioned against a "siloed" and "inflexible" approach to interpreting the teaching of prior art references. *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 97 F.4th 915, 928 (Fed. Cir. 2024) ("[T]he court's analysis seems to tackle the express statements of each reference one-by-one . . . but not fully assessing the teachings in toto. This seemingly siloed and inflexible approach left insufficient room for consideration of how background knowledge in the art would have impacted a POSA's understanding of, or motivation to modify, the primary references at issue, thereby inflating the significance of minor variations between the prior art and the claims.").

47. In making this determination, the Court must consider both the claimed invention and the prior art as a whole in light of the court's construction of the claims at issue. *See Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1479-80 (Fed. Cir. 1998) ("In determining obviousness, the invention must be considered as a whole and the claims must be considered in their entirety.").

48. "For obviousness, a single reference need not disclose every element of the claimed invention." *Hospira, Inc. v. Amneal Pharms., LLC*, 285 F. Supp. 3d 776, 783 (D. Del. 2018) (citing *Pfizer*, 480 F.3d at 1361).

49.    "While it may be easier to prove obviousness if each limitation of the claimed invention is found in the prior art, the level of skill of one of ordinary skill in the art can, at times, fill in the gap when limitations of the claimed invention are not specifically found in the prior art." *Belden Techs.*, 802 F. Supp. 2d at 563.

50.    A conclusion of obviousness may be based on a single reference or a combination of prior art references. *See Senju Pharm.*, 836 F. Supp. 2d at 208 ("[A] defendant asserting obviousness in view of a combination of references has the burden to show that a person of ordinary skill in the relevant field had a reason to combine the elements in the manner claimed."); *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986) ("We see no clear error in the Board's determination as to the teachings of the prior art references, in combination.").

51.    Where the issue of obviousness is based on a combination of elements, a patent challenger might demonstrate "that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention." *Pfizer*, 480 F.3d at 1361.

52.    "The combination of familiar elements according to known methods is ***likely*** to be obvious when it does no more than yield predictable results." *KSR Int'l*, 550 U.S. at 416 (emphasis added); *Q.I. Press Controls, B.V. v. Lee*, 752 F.3d 1371, 1379 (Fed. Cir. 2014). This is because "[g]ranting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility." *KSR Int'l*, 550 U.S. at 419.

53.    "[O]bviousness exists when 'a finite, and in the context of the art, small or easily traversed, number of options… would convince an ordinary skilled artisan of obviousness.'" *Purdue Pharma*, 642 F. Supp. 2d at 368 (quoting *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys.,*

*Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008)); *accord C.W. Zumbiel Co., Inc. v. Kappos*, 702 F.3d 1371, 1387 (Fed. Cir. 2012) (finding obviousness where the invention "involve[d] no more than the exercise of common sense in selecting one out of a finite—indeed very small—number of options"). In such a case, an invention is considered "obvious to try." *Hoffman-La Roche Inc. v. Apotex Inc.*, 748 F.3d 1326, 1332 (Fed. Cir. 2014) (finding claimed dosage obvious to try). Further, "if a technique has been used improve one device, and a [POSA] would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill." *KSR Int'l*, 550 U.S. at 401. "When the prior art provides the means of making the invention and predicts the results, and the patentee merely verifies the expectation through 'routine testing,' the claims are obvious. *Purdue Pharma*, 642 F. Supp. 2d at 368 (citing *Pfizer*, 480 F.3d at 1367).

54.     "One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR Int'l*, 550 U.S. at 419-20; *see also Norgren Inc. v. Int'l Trade Comm'n*, 699 F.3d 1317, 1324-26 (Fed. Cir. 2012) (affirming invalidity of claims under § 103 where the claimed invention solved known problems by the use of an obvious solution). Even more, the discovery of a problem does not always result in a patentable invention. *Norgren*, 699 F.3d at 1327. For instance, an alleged invention is obvious in view of "evidence of known problems and an obvious solution." *Id.*

55.     "A [POSA] is also a person of ordinary creativity, not an automaton." *KSR Int'l*, 550 U.S. at 421. "[I]n many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420.

56.     A POSA would also understand and consider the design incentives and market forces in their area of expertise that would prompt one to seek variations of products known to have a particular utility. *KSR Int'l*, 550 U.S. at 417.

f.      Motivation to Combine Prior Art

57.     A claim may be proven obvious in view of a single prior art reference or in view of a combination of prior art references. When the prior art references are combined to invalidate a claim under 35 U.S.C. § 103, there must be some reason to do so. That reason need not be expressly stated in one or any of the references used to show obviousness, but rather "may be found in any number of sources, including common knowledge, the prior art as a whole, or the nature of the problem itself." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1361 (Fed. Cir. 2006), *cert. denied*, 551 U.S. 1113 (2007); *see also Alza Corp. v. Mylan Lab'ys., Inc.*, 464 F.3d 1286, 1291 (Fed. Cir. 2006); *Janssen*, 97 F.4th at 929 ("[A] motivation may be found in many different places and forms and it need not be expressly stated in the references at all, let alone originate from the reference to be modified." (internal quotations omitted)).

58.     The Supreme Court held that rather than a rigid approach, § 103 analysis requires an "expansive and flexible approach" based on the principles laid down in *Graham*. *KSR Int'l*, 550 U.S. at 415; *see also Senju Pharm.*, 836 F. Supp. 2d at 208 ("The Supreme Court has emphasized the need for courts to value 'common sense' over 'rigid preventative rules.'").

59.     In determining whether the subject matter of a patent claim is obvious, "[t]he question is not whether the combination was obvious to the patentee but whether the combination was obvious to a [POSA]." *KSR Int'l*, 550 U.S. at 420. "Under the correct analysis, any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner

claimed." *Id.*; *see also Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) ("We therefore hold that… an analysis of obviousness… may include recourse to logic, judgment, and common sense available to the [POSA] that do not necessarily require explication in any reference or expert opinion.").

60.    Courts have sought to determine whether "a [POSA], before the time of invention and without knowledge of that invention, would have found the invention merely an easily predictable and achievable variation or combination of the prior art." *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1338 (Fed. Cir. 2010). If so, then the invention likely would have been obvious. *Id.* (citations omitted). "To preclude hindsight," the courts will take into account "evidence from before the time of the invention in the form of some teaching, suggestion, or even mere motivation… to make the variation or combination." *Id.* (citations omitted).

61.    "As the Supreme Court explained, 'The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.' The Supreme Court went on to state that 'when a patent simply arranges old elements with each *performing the same function* it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009) (quoting *KSR Int'l*, 550 U.S. at 417).

62.    Even if a reference does not rise to the level of prior art, a court may consider it as motivation to combine. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 537 F. Supp. 2d 1095, 1102 (S.D. Cal. 2008) (citing *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1337-38 (Fed. Cir. 2004)).

63.     As long as a POSA would have been motivated to combine references by the prior art as a whole, it is not necessary that the references be combined for the same reasons contemplated by the inventor. *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006).

64.     "When there is a design need or market pressure to solve a problem and there are a finite number or identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103." *KSR Int'l*, 550 U.S. at 421.

65.     "When a work is available in one field, design incentives and other market forces can prompt variation of it, either in the same field or in another. If a person of ordinary skill in the art can implement a predictable variation, and would see the benefit of doing so, §103 likely bars its patentability. Moreover, if a technique has been used to improve one device, and a [POSA] would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill." *KSR Int'l*, 550 at 401.

66.     "When the prior art provides the means of making the invention and predicts the results, and the patentee merely verifies the expectation through 'routine testing,' the claims are obvious." *Purdue Pharma*, 642 F. Supp. 2d at 368 (citing *Pfizer*, 480 F.3d at 1367).

67.     The motivation to combine inquiry is not limited to what products are forthcoming or currently available on the market, particularly given the lengthy approval process of the U.S. Food and Drug Administration ("FDA"). *Bayer Pharma AG v. Watson Lab'ys., Inc.*, 874 F.3d 1316, 1324 (Fed. Cir. 2017); *see also id.* at 1326 ("'Motivation to

combine may be found in many different places and forms; it cannot be limited to those reasons the FDA sees fit to consider in approving drug applications.'" (quoting *Allergan, Inc.*, 726 F.3d at 1292). "[O]bviousness 'does not require that the motivation be the ***best*** option, only that it be a ***suitable*** option from which the prior art does not teach away.'" *Id.* at 1328 (emphasis added).

68.     "A reference does not teach away if it does not criticize, discredit, or otherwise discourage' investigation into the invention claimed." *Galderma Lab'ys, L.P. v. Tolmar, Inc.*, 737 F.3d 731, 739 (Fed. Cir. 2013) (alteration and citation omitted); *accord. In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004). Preferred disclosures do not teach away. *Janssen*, 97 F.4th at 932. For example, a teaching that a particular value (e.g., particle size) is optimal, is not a criticism of all other particle sizes. *Id.*

> g.    Reasonable Expectation of Success

69.     "Obviousness does not require absolute predictability of success;" rather, "[a]ll that is required is a reasonable expectation of success" in making the invention via the combination. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) (citation omitted); *see also Duramed Pharms., Inc. v. Watson Lab'ys., Inc.*, 413 F. App'x 289, 294 (Fed. Cir. 2011) ("There is no requirement that a teaching in the prior art be scientifically tested or even guaranteed success before providing a reason to combine. Rather, it is sufficient that one of ordinary skill in the art would perceive from the prior art a reasonable likelihood of success." (citations omitted)).

70.     "[O]bviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Pfizer*, 480 F.3d at 1364; *see also In re O'Farrell*, 853 F.2d 894, 904 (Fed. Cir. 1988) ("For obviousness under § 103, all that is required is a reasonable expectation of success."); *Allergan, Inc.*, 726 F.3d at 1292.

71.    "While the definition of 'reasonable expectation' is somewhat vague, [Federal Circuit] case law makes clear that it does not require a *certainty* of success." *Medichem*, 437 F.3d at 1165. Requiring testing for every possible configuration or combination in the prior art "improperly equates a reasonable expectation of success with absolute certainty." *See, e.g.*, *Hospira*, 285 F. Supp. 3d at 794 (citation omitted). None of "the length, expense, [or] difficulty of the techniques used are dispositive since many techniques that require extensive time, money, and effort to carry out may nevertheless be arguably 'routine' to [a POSA]." *Pfizer*, 480 F.3d at 1367.

h.    Secondary Considerations

72.    In its obviousness analysis, a court also considers secondary considerations of nonobviousness. *KSR Int'l*, 550 U.S. at 406. The purpose of secondary considerations of nonobviousness is to "check against hindsight bias." *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014); *accord Alza*, 464 F.3d at 1290 (explaining that secondary considerations guard against hindsight). Secondary considerations (also called objective indicia) of nonobviousness "can include evidence of commercial success, long felt but unsolved needs, and failure of others, as well as unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention." *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 344 (D. Del. 2010); *see also Imperial Chem.*, 777 F. Supp. at 372, n.91.

73.    Acadia bears the burden of production with respect to evidence of any alleged secondary considerations. *Novo Nordisk A/S v. Caraco Pharm. Lab'ys., Ltd.*, 719 F.3d 1346, 1354 (Fed. Cir. 2013) (discussing that the burden of production shifts to the patentee "once the court determine[s] that the challenger has established a prima facie case of obviousness"). In

other words, the patentee must present evidence to support a finding that a given secondary consideration exists. *See, e.g.*, *Hospira*, 285 F. Supp. 3d at 784 (citing *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1053 (Fed. Cir. 2016)); *Prometheus Lab'ys., Inc.*, 805 F.3d at 1101-02.

74.     Each secondary consideration is analyzed on a claim-by-claim basis. *See, e.g.*, *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264-65 (Fed. Cir. 2013) (citing *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992)).

75.     Importantly, secondary considerations cannot override a strong *prima facie* showing of obviousness. *See, e.g.*, *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013) ("[W]here a claimed invention represents no more than the predictable use of prior art elements according to established functions,… evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness."); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) ("[G]iven the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion that [the claim] would have been obvious."); *Dystar*, 464 F.3d at 1371 ("Secondary considerations of nonobviousness are insufficient as a matter of law to overcome our conclusion that the… claim [at issue] would have been obvious."); *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1484 (Fed. Cir. 1997); *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 923 F. Supp. 2d 602, 686 (D. Del. 2013) (stating that despite finding the objective indicia of nonobviousness, "[t]he totality of that evidence did not strongly persuade the Court as to [the invention's] nonobviousness").

(i)     Nexus

76.     "For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the **claimed invention**. Where the offered secondary consideration actually results from something other than what is both claimed and **novel** in the claim, there is no nexus to the merits of the claimed invention." *In re Huai-Hung Kao*, 639 F.3d at 1068 (citations omitted); *see also In re GPAC*, 57 F.3d at 1580 ("For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention."); *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1330 (Fed. Cir. 2017). Even "impressive" evidence of secondary considerations is not "entitled to weight" unless "it is relevant to the claims at issue." *In re Paulsen*, 30 F.3d 1475, 1482 (Fed. Cir. 1994). Nexus requires a direct connection to the claimed features of the invention as recited in the language of the patent claims. *B.E. Meyers & Co., Inc. v. United States*, 47 Fed. Cl. 375, 378-79 (Fed. Cl. 2000).

77.     Courts often exclude evidence of secondary considerations absent a showing of nexus. *See, e.g.*, *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 626, 651 (D. Del. 2014) (excluding expert testimony regarding industry praise where no nexus existed), *aff'd sub nom. Cot'n Wash Inc. v. Sun Prods. Corp.*, 606 F. App'x 1009 (Fed. Cir. 2015); *Inventio AG v. Thyssenkrupp Elevator Corp.*, No. 08-cv-00874-RGA, 2014 WL 5786668, at *8 (D. Del. Nov. 6, 2014) (evidence of secondary considerations properly excluded where plaintiff failed to show nexus to claimed invention), *aff'd*, 622 F. App'x 906 (Fed. Cir. 2015).

78.     To fulfill the nexus requirement, the proffered evidence of secondary considerations must also be commensurate in scope with the asserted claims. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1289, 1336 (Fed. Cir. 2010) ("Because the claims are

broad enough to cover devices that either do or do not solve the 'short fill' problem, Abbott's objective evidence of non-obviousness fails because it is not 'commensurate in scope with the claims which the evidence is offered to support.'"), *vacated on other grounds*, 374 F. App'x 35 (Fed. Cir. 2010), and *reinstated in part*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc); *Muniauction Inc. v. Thompson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008) ("[S]econdary considerations may presumptively be attributed to the patented invention only where 'the marketed product embodies the claimed features, and is coextensive with them.'"); *MeadWestVaco Corp.*, 731 F.3d at 1264-65 (holding that district court erred where its "analysis of the secondary considerations of nonobviousness involved only fragrance-specific uses, but the [asserted claims] are not fragrance specific"); *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008) ("'objective evidence of nonobviousness must be commensurate in scope with the claims which the evidence is offered to support.'"); *In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983) ("It is well settled 'that objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support.'"); *In re Peterson*, 315 F.3d 1325, 1331 (Fed. Cir. 2003) (affirming finding by the Board that unexpected results commensurate in scope with claimed range of 1-3% were not shown where unexpected results were only associated with 2%). Thus, if evidence of secondary considerations relates to a narrow aspect of a much broader claim, such evidence is not commensurate with the scope of the claims and fails to establish the nonobviousness of the asserted claims. *See Therasense*, 593 F.3d at 1336.

79.    Nexus must be established through specific evidence. *See In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (party asserting secondary considerations "must submit some factual evidence that demonstrates the nexus"); *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984).

80.     There may be a presumption of nexus when the product relied on to show the secondary consideration embodies the claim features and is coextensive with the claims. However, there is typically no presumption of nexus when (a) claims cover only some aspects of the marketed embodiment and/or (b) multiple patents cover the same product. *See, e.g.*, *Therasense*, 593 F.3d at 1299 (ruling that presumption of nexus did not apply where patentee's device was covered by two patents, one of which was prior art patent that rendered the challenged claims invalid); *Syntex (U.S.A.)*, 407 F.3d at 1383 ("Assuming that the active ingredient in the formulation was previously patented, the commercial success of ACULAR heavily derive from subject matter that does not on the whole contribute to the patentable distinctiveness of these claims. In such a case, the trial court should carefully consider whether the nexus requirement of our law is satisfied." (citation omitted)). Also, a presumption of nexus can be rebutted by evidence that the secondary consideration was due to extraneous factors other than the patented invention, such as unclaimed features, features in the prior art, and/or external factors (e.g., marketing efforts, blocking patents, regulatory exclusivity). *See, e.g.*, *Hospira*, 285 F. Supp. 3d at 797-98.

(ii)     Skepticism

81.     In order to assert skepticism as a secondary consideration of nonobviousness, a party must provide actual evidence of skepticism through direct testimony or written or published statements; mere testimony to alleged out-of-court statements is not sufficient. *See Allergan, Inc. v. Watson Lab'ys., Inc.-Fla.*, 869 F. Supp. 2d 456, 490-91 (D. Del. 2012) ("[T]his testimony refers only to out-of-court statements of unnamed Bayer employees, no Bayer employees testified at trial, and no written or published statements of skepticism from Bayer were introduced into evidence to support Bayer's alleged rationale.").

82.     Where the record "does not express any direct skepticism concerning the feasibility" of the invention, the "assertion that there were secondary indicia of skepticism that rendered the invention of the asserted claims nonobvious is supported only by evidence that is irrelevant and not supportive." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1352 (Fed. Cir. 2010); *see also Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1274-75 (Fed. Cir. 2004) (where the record actually "does not show that [the industry] doubted that [the claimed invention] would work," the evidence of "skepticism of experts [i]s weak").

83.     Further, evidence of skepticism by one, or even a few, person(s) is insufficient to support a finding of nonobviousness. Rather, a patentee must show that "those of skill in the art were generally skeptical as to whether [the invention] was possible." *Allergan*, 869 F. Supp. 2d at 491. And more than "slight evidence" of skepticism must be shown to overcome strong teachings in the prior art. *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1583 (Fed. Cir. 1996).

84.     Substantiating a claim of skepticism of experts often requires a showing of technical infeasibility or manufacturing uncertainty—not economic considerations or other companies' preferences. *See Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983) ("[T]hat the two disclosed apparatus would not be combined by businessmen for economic reasons is not the same as saying that it could not be done because skilled persons in the art felt that there was some technological incompatibility that prevented their combination."); *Muniauction*, 532 F.3d at 1328 ("[M]arket-force skepticism also lacks the requisite nexus to the claimed invention."); *AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 980 (Fed. Cir. 2013) (explaining "evidence of corporate prudence" is not "industry skepticism").

85.     Even if reliable evidence of skepticism is provided, the nexus requirement remains and a party must "demonstrate [that] the… nexus between the… claimed invention and the evidence" of skepticism exists. *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 905 (Fed. Cir. 2011) (internal quotation marks omitted). Skepticism that is not directed at the solution provided by the patented invention "is not the type of skepticism that mounts to evidence of nonobviousness." *In re Youngblood*, 215 F.3d 1342, at *11 (Fed. Cir. July 6, 1999); *see also Dow Jones*, 606 F.3d at 1352 (rejecting skepticism evidence that "d[id] not directly address whether there was actual skepticism concerning the invention"); *Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 642 F.3d 1370, 1377 (Fed. Cir. 2011) (finding skepticism that the invention would be effective for transient insomnia to be "of little relevance" where "the products disclosed by the claims at issue are not limited to treatment for transient insomnia").

(iii)    Long-Felt Unmet Need

86.     "Evidence of a long-felt need is only probative of nonobviousness… when both 'a demand existed for the patented invention, and others tried but failed to satisfy that demand." *In re Copaxone Consol. Cases*, Case No. 14-cv-1171-GMS, 2017 WL 401943, at *23 (D. Del. Jan. 30, 2017) (quoting *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1083 (Fed. Cir. 2012)).

87.     To show the existence of a long-felt but unmet need, the patent owner must show recognition of a problem in the relevant field for a considerable time, that the claimed invention solved the problem, and that the solution was not dependent on unrelated advances in the field. *Perfect Web*, 587 F.3d at 1332. In other words, the need must have been a persistent one that was recognized by those of ordinary skill in the art. *In re Gershon*, 372 F.2d 535, 539 (C.C.P.A. 1967) ("Since the alleged problem in this case was first recognized by appellants, and others apparently have not yet become aware of its existence, it goes without saying that there could

not possibly be any evidence of either a long felt need in the… art for a solution to a problem of dubious existence or failure of others skilled in the art who unsuccessfully attempted to solve a problem of which they were not aware."); *Orthopedic Equip. Co., Inc. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1382 (Fed. Cir. 1983).

88.    Additionally, the long-felt need must not have been satisfied by another before the invention by the applicant. *Newell Cos.*, 864 F.2d at 768.

89.    "The patentee must point to an 'articulated [and] identified problem and evidence of efforts to solve the problem' [that] were, before the invention, unsuccessful." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 816 F.3d 788, 804-05 (Fed. Cir. 2016), *vacated in part on other grounds on reh'g en banc*, 839 F.3d 1034 (Fed. Cir. 2016).

90.    When asserted as a secondary consideration of nonobviousness, analysis of a long- felt but unmet need begins at the time that an identified problem is articulated and ends at the time of filing of the claimed invention. *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993) ("Long-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem."); *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009) ("[W]e look to the filing date of the challenged invention to assess the presence of a long-felt and unmet need.").

91.    Long-felt need is analyzed based on the date when the problem to be solved was identified. *See, e.g.*, *Warner Chilcott Co., LLC v. Teva Pharms. USA, Inc.*, 37 F. Supp. 3d 731, 739 (D. Del. 2014) ("Long-felt need is evaluated from the date of the closest prior art.") (citing *Graham*, 383 U.S. at 36).

92.    It is not enough for a patentee to identify drawbacks; the patentee must "show that these drawbacks constituted a long-felt unmet need alleviated by the patent." *Perfect Web*, 587

F.3d at 1332; *In re Gardner*, 449 F. App'x 914, 918 (Fed. Cir. 2011) ("[O]nce a long-felt need is established, evidence must show that the claimed invention satisfied that need." (citing *In re Cavanagh*, 436 F.2d 491, 496 (C.C.P.A. 1971))). Bare assertions that a claimed invention made improvements without supporting data are not sufficient to show that the claimed invention met any long-felt need. *Perfect Web*, 587 F.3d at 1333. Thus, an assertion of long-felt need must be rejected where the patentee "provided no evidence to explain how long [any relevant] need was felt… when the problem first arose," or how the "need [was] alleviated by the patent." *Id.* at 1332.

93.     Further, the invention must in fact satisfy the long-felt need. *In re Cavanagh*, 436 F.2d at 491. "Evidence of the long-felt need factor must squarely address the need satisfied by the asserted claims themselves." *AstraZeneca LP v. Breath Ltd.*, 88 F. Supp. 3d 326, 387 (D.N.J. 2015), *aff'd*, 603 F. App'x 999 (Fed. Cir. 2015). A long-felt but unmet need must be "sufficiently connected with the novel elements of the asserted claims." *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 838 (Fed. Cir. 2015). And even if the patentee introduces evidence of a long-felt need ostensibly tied to the patent claims, where the differences between the prior art and the claimed invention are minimal, "it cannot be said that any long-felt need was unsolved." *Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010).

94.     Federal Circuit precedent "requires that the applicant submit actual evidence of long-felt need, as opposed to argument." *In re Kahn*, 441 F.3d at 990-91. "[a]bsent a showing of long-felt need or the failure of others, the mere passage of time without the claimed invention is not evidence of nonobviousness." *Id.* (citing *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004)). A lack of demand because of general satisfaction with the

prior art is contrary to a finding of long-felt need. *Nat'l Steel Car*, 357 F.3d at 1340 ("Finding of no customer demand is flatly contradictory with [the district court's] conclusion that a long-felt need existed.").

95.    The long-felt need must be filled by the patented features, not unclaimed features. *See, e.g.*, *MeadWestVaco Corp.*, 731 F.3d at 1264-65 (reversing district court on long-felt need for claimed tubing device in fragrance-specific uses because specific claims were not limited to fragrance-specific uses); *Therasense, Inc.*,593 F.3d at 1299.

96.    Even if there is evidence that the "claimed [invention] may have been beneficial," that evidence is not probative if "others had previously solved the long-felt need." *In re PepperBall Techs., Inc.*, 469 F. App'x 878, 882 (Fed. Cir. 2012); *see also Newell Cos.*, 864 F.2d at 768 ("[O]nce another supplied the key element, there was no long-felt need.").

97.    Further, evidence of long-felt need may be discounted in certain circumstances: (1) where there is no actual and present need, but rather a need that has yet to be realized; (2) where the long-felt need is part of a niche market; or (3) where the differences between the prior art and the claimed invention are minimal. *Tokyo Keiso Co., Ltd. v. SMC Corp.*, 307 F. App'x 446, 453 (Fed. Cir. 2009) (finding evidence of "long-felt need" is not probative in "a niche market," where "it is not surprising that it took a few years for a company to expand on the prior art"); *Geo. M. Martin*, 618 F.3d at 1304 ("Where the differences between the prior art and the claimed invention are… minimal,… it cannot be said than any long-felt need was unsolved.").

(iv)    Unexpected Results

98.    Whether there are unexpected results is a question of fact. *In re Peterson*, 315 F.3d at 1331.

99.    To be considered as evidence of nonobviousness, "unexpected results must be established by factual evidence." *In re De Blauwe*, 736 F.2d at 705. "Mere argument or conclusory statements" by patentee "do[] not suffice." *Id.*

100.    The relevant time period for the "unexpected results" inquiry is whether the results would have been unexpected by one of ordinary skill in the art at the time of the patentee's application and based on knowledge available at that time. *See, e.g.*, *In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997); *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 460 F. Supp. 2d 659, 667 ("[S]everal cases… preclude reliance by an inventor or patentee on undisclosed, later-discovered advantages.").

101.    To support a finding of unexpected results, a patentee must "show that the claimed invention exhibits some superior property or advantage that a [POSA] would have found surprising or unexpected" compared to the closest prior art. *In re Geisler*, 116 F.3d at 1469; *Bristol-Myers*, 752 F.3d at 977 ("To be particularly probative, evidence of unexpected results must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention."); *Alcon, Inc. v. Teva Pharms. USA, Inc.*, 664 F. Supp. 2d 443, 464 (D. Del. 2009) ("When 'unexpected' and 'significant' differences exist between the properties of the claimed invention and those of the prior art, a finding of nonobviousness may be warranted."); *Acorda Therapeutics, Inc. v. Roxane Lab'ys., Inc.*, No. 14-cv-882-LPS, 2017 WL 1199767, at *36 (D. Del. Mar. 31, 2017) (quoting *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995)), *aff'd*, 903 F.3d 1310 (Fed. Cir. 2018); ("To be particularly probative, evidence of unexpected results must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of

ordinary skill in the art at the time of the invention."); *Janssen*, 97 F.4th at 933; *Bristol-Myers*, 752 F.3d at 977  ("The starting reference point for evaluating unexpectedness is the closest prior art."). This showing requires "factual evidence," not merely the unsupported assertions of counsel. *In re Youngblood*, 215 F.3d at *7 (deeming unsupported assertions "insufficient"). And any evidence that is in fact provided should be "weighed against contrary evidence indicating that the results were not unexpected or not a substantial improvement over the prior art." *Santarus, Inc. v. Par Pharm, Inc.*, 720 F. Supp. 2d 427, 457 (D. Del. 2010), *rev'd on other grounds*, 694 F.3d 1344 (Fed. Cir. 2012).

102.    To assert that results were unexpected, "the patent owner must first show 'what properties were expected.'" *Aventis*, 743 F. Supp. 2d at 348; *see also Pfizer*, 480 F.3d at 1371 ("In order to properly evaluate whether a superior property was unexpected, the court should have considered what properties were expected."). Any unexpected property must prove to be a significant benefit in comparison to the prior art. *See Bristol-Myers*, 752 F.3d at 977 ("Unexpected properties, however, do not necessarily guarantee that a new compound is nonobvious. While a 'marked superiority' in an unexpected property may be enough in some circumstances to render a compound patentable, a 'mere difference in degree' is insufficient."); *Santarus Inc.*, 720 F. Supp. 2d at 457 (explaining that "a party [claiming unexpected results] must produce evidence demonstrating 'substantially' improved results that are unexpected in light of the prior art"). Further, in order to assert unexpected results, a patentee must present evidence that the results claimed to be unexpected actually occurred. *In re De Blauwe*, 736 F.2d at 705 ("It is well settled that unexpected results must be established by factual evidence."). Speculation or unproved hypotheses about what might become an unexpected result are simply not enough. *See In re Geisler*, 116 F.3d at 1470.

103.    Evidence of unexpected results must make a comparison of the results achieved by the claimed invention with the results from the closest prior art. *See, e.g.*, *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1363 (Fed. Cir. 2012) ("Wrigley needed to demonstrate that the results were unexpected to a significant degree beyond what was already known about the effect of combining" the prior art.); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006) ("When unexpected results are used as evidence of nonobviousness, the results must be shown to be unexpected compared with the closest prior art."); *In re DeBlauwe*, 736 F.2d at 705; *In re Johnson*, 747 F.2d 1456, 1460 (Fed. Cir. 1984); *Novartis Pharms. Corp. v. W.-Ward Pharms. Int'l Ltd.*, 287 F. Supp. 3d 505, 552 (D. Del. 2017) ("Since Plaintiffs have failed to identify the closest prior art, let alone compare the RADIANT-3 study to any piece of prior art, they have failed to carry their burden to establish unexpected results by a preponderance of the evidence."). A party advancing evidence of unexpected results must, therefore, provide evidence of what would have been expected by a skilled artisan. *Pfizer*, 480 F.3d at 1371 ("[I]n order to properly evaluate whether a superior property was unexpected, the court should have considered what properties were expected."). Only by comparison to what would have been expected can the patentee then show that its claimed invention has superior properties that were unexpected. *Id.*

104.    There is no definitive rule for determining what prior art constitutes the closest prior art; however, courts may focus on the number of claim limitations met by the candidate prior art reference, while bearing in mind the relative importance of particular limitations, which will usually lead to the closest prior art reference. *See, e.g.*, *In re Merchant*, 575 F.2d 865, 868 (C.C.P.A. 1978).

105. The closest prior art does not need to be the commercial standard in the industry or even commercially available. *See, e.g.*, *Trs. of Columbia Univ. v. Illumina, Inc.*, 620 F. App'x 916, 932 (Fed. Cir. 2015) (non-precedential) ("[T]here is no requirement that the closet prior art be commercialized." (citing *In re Merchant*, 575 F.2d at 869)); *In re Wright*, 569 F.2d 1124, 1128 (C.C.P.A. 1977) (failure of a particular reference to constitute "the commercial standard" did not diminish its position as the closest prior art).

106. Unexpected results that are not tied to a disclosure in the patent are given little weight. *See, e.g.*, *Pfizer*, 460 F. Supp.2d at 667 ("The fact that the hypothetical [POSA] would have been surprised to learn that the particular combination of elements created an unexpected benefit completely unrelated to the desire outcome does not logically imply that it would not have been obvious to combine those elements to achieve the desired result." (citations omitted)).

107. Any evidence of an unexpected result must be commensurate with the scope of the claimed invention. *In re Grasselli*, 713 F.2d at 743.

108. To be probative in the validity inquiry, the supposedly unexpectedly superior result must be "different in kind and not merely in degree from the results in the prior art." *Galderma Lab'ys.*, 737 F.3d at 739 (quotation and citation omitted); *see also Bristol-Myers*, 752 F.3d at 977 (Fed. Cir. 2014) ("Unexpected properties, however, do not necessarily guarantee that a new compound is nonobvious. While a 'marked superiority' in an expected property may be enough in some circumstances to render a compound patentable, a 'mere difference in degree' is insufficient."); *Santarus Inc.*, 720 F. Supp. 2d at 457 (stating that a party claiming unexpected results must "produce evidence demonstrating ʹsubstantially improvedʹ results that are unexpected in light of the prior art" (citation omitted)); *In re Aller*, 220 F.2d at

457-59 (finding no evidence of unexpected results where claimed conditions allegedly contributed to roughly 20 percent improvement in yield); *Allergan, Inc. v. Teva Pharms. USA, Inc.*, 2:15-CV-1455-WCB, 2017 WL 4803941, at *19 (E.D. Tex. Oct. 16, 2017), *aff'd*, 742 F. App'x 511 (Fed. Cir. 2018) ("To be probative of nonobviousness, unexpected results must be 'different in kind and not merely degree from the results of the prior art.'" (quoting *Galderma Lab'ys*, 737 F.3d at 739)); *E.I. DuPont de Nemours & Co.*, 904 F.3d at 1011-12 (evidence of alleged unexpected results was insufficient where patentee only presented evidence for one point in the claimed range and had failed to show that 20% increase in yield was a difference in kind rather just a difference in degree).

109.    Typically, a patentee must provide objective factual evidence to show that a POSA would not have expected the magnitude of superior results achieve by the claimed invention. *See, e.g.*, *In re Youngblood*, 215 F.3d at *7 (deeming unsupported assertions "insufficient").

110.    When a result is a product of routine optimization that would have been obvious to the POSA, it is not unexpected or surprising. *See, e.g.*, *Pfizer*, 480 F.3d at 1368 ("Discovery of an optimum value of a variable in a known process is usually obvious. Similarly, we hold that the optimization of the acid addition salt formulation for an active pharmaceutical ingredient would have been obvious."); *Senju Pharm. Co. v. Lupin Ltd.*, 780 F.3d 1337, 1353 (Fed. Cir. 2015).

111.    The results must be truly unexpected and not the product of the POSA's desire to achieve the optimum value or performance. *See, e.g.*, *In re Peterson*, 315 F.3d at 1330 ("The normal desire of scientists or artisans to improve upon what is already generally known provides the motivation to determine where in a disclosed set of percentage ranges is the optimum combination of percentages.").

112.     As with other secondary considerations, even where a claimed invention "exhibits unexpectedly superior results," "this secondary consideration does not overcome [a] strong showing of obviousness." *Pfizer*, 480 F.3d at 1372. Where "the record establishes such a strong case of obviousness," any "alleged unexpectedly superior results are ultimately insufficient." *Id.* In particular, "evidence of superior [results] does nothing to undercut the showing that there was a reasonable expectation of success, …, even if the level of success may have turned out to be somewhat greater than would have been expected." *Hoffmann-La Roche*, 748 F.3d at 1334.

(v)     Commercial Success

113.     The burden is on the patentee to demonstrate a nexus between the secondary indicia of non-obviousness relied upon and the claimed invention. *See, e.g.*, *Asyst Techs.*, 544 F.3d at 1316 (although embodiments of the invention may have enjoyed commercial success, patentee failed to link that success to the patented features).

114.     Where a "product embodie[s] at least two patents," the patentee is not entitled to a presumption of nexus because that is "not a situation where the success of a product can be attributed to a single patent." *Therasense*, 593 F.3d at 1299.

115.     Commercial success of an "invention" might be due not to the invention itself but to skillful marketing of the product embodying the invention. *See Ritchie v. Vast Res.*, 563 F.3d 1334, 1336-37 (Fed. Cir. 2009).

116.     Commercial success is "'a fact-specific inquiry' that may involve considering the operation of specific blocking patents on possible competition." *Acorda Therapeutics, Inc. v. Roxane Lab'ys, Inc.*, 903 F.3d 1310, 1338 (Fed. Cir. 2018) (citing *Merck Sharp & Dohme Corp. v. Hospira, Inc.*, 874 F.3d 724 (Fed. Cir. 2017)).

117. A "blocking patent" is a patent "where practice of a later invention would infringe the earlier patent[,]" and so non-owners of the patents are "blocked" from practicing or developing the later invention due to the earlier patent. *Acorda*, 903 F.3d at 1337.

118. When a blocking patent is found to have been in place and blocked competition from developing the later invention due to the patent, the commercial success is of "minimal probative value." *Galderma Lab'ys, L.P. v. Tolmar, Inc.*, 737 F.3d 731, 741 (Fed. Cir. 2013); *see also Acorda*, 903 F.3d at 1338; *Merck*, 874 F.3d at 741. *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005) (finding blocking patents effectively blocked market entry of others and therefore the commercial success evidence was "weak").

119. While the mere existence of a blocking patent does not discount evidence of commercial success, "if all other variables are held constant, a blocking patent diminishes possible rewards from a non-owner's or non-licensee's investment activity aimed at an invention whose commercial exploitation would be infringing, therefore reducing incentives for innovations in the blocked space by non-owners and non-licensees of the blocking patent." *Acorda*, 903 F.3d at 1339; *see also Regneron Pharms. v. Mylan Pharms.*, 2024 WL 382495 at * 79-95 (N.D. W.V. 2024) (finding that market pressure existed to develop less frequent dosing regimens for a drug, and that blocking patents prevented others from developing the same dosing regimens).

(vi)    Failure of Others

120. Courts often view the failure of others inquiry as going hand-in-hand with the long-felt need inquiry. *Adapt Pharma Operation Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1376-77 (Fed. Cir. 2022) (citing *Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1369 (Fed. Cir. 2017)). The failure of others to obtain FDA approval for their products is not

dispositive of failure of others. *Id.* A court may weigh such evidence, along with other evidence to determine the probative value of the presence or lack of an FDA approval. *Id.*

121.    Unsuccessful attempts done before the publication of the invalidating prior art generally has little relevance and should not be considered. *See Graham*, 383 U.S. at 36 ("At the latest, those differences were rendered apparent in 1953 by the appearance of the Livingstone patent, and unsuccessful attempts to reach a solution to the problems confronting Scoggin made before that time became wholly irrelevant.").

122.    For failure of others to be relevant as a secondary consideration, the cause of the failures must be attributable to the absence of the claimed aspects of the invention in the attempt. *Cubist Pharms., Inc. v. Hospira, Inc.*, 805 F.3d 1112, 1126 (Fed. Cir. 2015); *Geo M. Martin*, 618 F.3d at 1305 (rejecting patentee's evidence of failure of others where the differences between the prior art and claimed invention were small and preference for patented machine was due to an unclaimed property).

123.    Alleged failures of others that are not a result of difficulties in implementing the technology do not provide a valid secondary consideration. *Dystar*, 464 F.3d at 1372 ("Buffalo's decision was thus not a failed attempt, but a calculated business judgment to abandon a potential new product line.").

(vii)    Copying

124.    Evidence of copying is not probative of nonobviousness in the ANDA context because under the Hatch-Waxman Act, the generic pharmaceutical manufacturer is required to demonstrate the bioequivalence of its proposed drug product to the branded product for approval of the FDA. *Bayer Healthcare Pharms., Inc. v. Watson Pharms., Inc.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013) ("[E]vidence of copying in the ANDA context is not probative of

nonobviousness because a showing of bioequivalence is required for FDA approval."); *see also Purdue Pharma Prods.*, 377 F. App'x at 983.

    2.    Written Description

    125.    A patent cannot claim more than it describes. *See* 35 U.S.C. § 112 ("The specification shall contain a written description of the invention…."); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) ("[T]he description must clearly allow [POSAs] to recognize that [the inventor] invented what is claimed." (citation and internal quotation marks omitted)); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000) (explaining the purpose of the written description requirement "is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification").

    126.    Determining whether a patent is invalid for failure to meet the written description requirement is a question of fact. *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1243 (Fed. Cir. 2002).

    127.    "The test for [written description] sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date…. [P]ossession as shown in the disclosure is a more complete formulation." *Ariad Pharms.*, 598 F.3d at 1351 (internal citations and quotation marks omitted). To fulfill the written description requirement, the patent owner must indicate his or her possession of the invention at the time of filing the patent application as indicated by "an objective inquiry into the four corners of the specification." *Id.*

    128.    Further, "[t]he description requirement of the patent statute requires a description of an invention, not an indication of a result that one might achieve if one made that invention." *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997). "To

fulfill the written description requirement, a patent specification must describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that 'the inventor invented the claimed invention.'" *Id.* at 1566 (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997); *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989)). "Thus, an applicant complies with the written description requirement 'by describing the invention, with all its claimed limitations, not that which makes it obvious,' and by using 'such descriptive means as words, structures, figures, diagrams, formulas, etc., that set forth the claimed invention.'" Regents, 119 F.3d at 1566 (quoting *Lockwood*, 107 F.3d at 1572); *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1379 (Fed. Cir. 2009) (explaining that to comply with the written description requirement of § 112, a patentee must describe "the invention, with all its claimed limitations"); *In re Curtis*, 354 F.3d 1347, 1355 (Fed. Cir. 2004) (affirming BPAI's finding of invalidity for lack of written description where there was "unpredictability in performance of certain species or subcombinations other than those specifically enumerated [in the disclosure]" (internal quotations omitted)).

129.    A specification provides adequate written description if it reasonably conveys to a POSA that the inventor had possession of the ***entire*** claimed subject matter as of the filing date. *See Ariad Pharms.*, 598 F.3d at 1351-52; *Boston Sci. Corp. v. Johnson & Johnson Inc.*, 647 F.3d 1353, 1366 (Fed. Cir. 2011). Ultimately, "it is in the patent specification where the written description requirement must be met." *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004); *FWP IP ApS v. Biogen MA, Inc.*, 749 F. App'x 969, 973 (Fed. Cir. 2018) ("To demonstrate possession, the inventor must provide enough description in the specification….").

130.    "The purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not over-reach the scope of the inventor's contribution to the field of art as described in the patent specification." *Ariad Pharms.*, 598 F.3d at 1353-54 (internal quotations omitted). It has also been said that "[t]he written description requirement exists to ensure that inventors do not attempt to preempt the future before it has arrived." *Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1036 (Fed. Cir. 2011) (citation and internal quotation marks omitted).

131.    The written description requirement is not necessarily met because the claim language appears in the patent specification. *See Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968-69 (Fed. Cir. 2002). Nor is the written description a question of whether a POSA might be able to construct the patentee's invention from the teachings of the disclosure. Rather, it is a question of whether the application "necessarily discloses" the particular invention. *See Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1327 (Fed. Cir. 2000) (quoting *Martin v. Mayer*, 823 F.2d 500, 505 (Fed. Cir. 1987)). "[A] description that merely renders the invention obvious does not satisfy the requirement." *Ariad Pharms.*, 598 F.3d at 1352. "An inventor need not 'prove that a claimed pharmaceutical compound actually achieves a certain result. But when the inventor expressly claims that result, our case law provides that [such] result must be supported by adequate disclosure in the specification.'" *Biogen Int'l Gmbh v. Mylan Pharms. Inc.*, 18 F.4th 1333, 1343 (Fed. Cir. 2021) (citing *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys. Inc.*, 923 F.3d 1368, 1384 (Fed. Cir. 2019)).

132.    Where a patentee seeks to satisfy the written description requirement by an inherent disclosure, the missing descriptive matter must necessarily be present in the patent's specification such that a person of skill in the art would recognize it. *See, e.g.*, *In re Robertson*,

169 F.3d 743, 745 (Fed. Cir. 1999) ("To establish inherency, the extrinsic evidence 'must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by [POSAs].' 'Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.'" (citations omitted)).

133.    A variety of factors are used to evaluate the adequacy of the disclosure, including: (1) the existing knowledge in the particular field, (2) the extent and content of the prior art, (3) the maturity of the science or technology, and (4) the predictability of the aspect at issue. *Ariad Pharms.*, 598 F.3d at 1351 (quoting *Capon v. Eshhar*, 418 F.3d 1349, 1359 (Fed. Cir. 2005)). The level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology. *Id.*

134.    Additionally, describing one embodiment of a claimed invention does not necessarily satisfy the written description requirement; rather, a description of a "single embodiment would support [] a generic claim only if the specification would reasonably convey to a [POSA] that [the inventor] had possession of the claimed subject matter at the time of filing." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005) (citation and internal quotation marks omitted). Thus, a patentee "cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed." *Id.* The specification itself must demonstrate that the inventor was in possession of the ***entirety*** of the claimed invention. *See Ariad Pharms.*, 598 F.3d at 1352.

3.     Enablement

135.     A patent specification must provide sufficient information to allow a POSA to make and use the invention claimed as of the filing date. *See* 35 U.S.C. § 112, ¶ 1. A specification lacks enablement if it fails to teach a POSA "how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363, 1370 (Fed. Cir. 2013) (citations omitted), *vacated on other grounds*, 574 U.S. 318 (2015); *see also Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (citing *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). Enablement is a question of law based on underlying factual inquiries. *See ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010).

136.     The enablement "doctrine prevents both inadequate disclosure of an invention and overbroad claiming that might otherwise attempt to cover more than was actually invented. Thus, a patentee chooses broad claim language at the peril of losing any claim that cannot be enable across its full scope of coverage." *See, e.g.*, *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1381 (Fed. Cir. 2012); *see also Janssen Pharmaceutica N.V. v. Teva Pharms. USA, Inc.*, 583 F.3d 1317, 1325-28 (Fed. Cir. 2009) (invalidating method patent for treatment of Alzheimer's with galanthamine invalid for lack of enablement).

137.     "Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). A court may consider several factors, often called the *Wands* factors, in determining whether undue experimentation is needed to practice a claimed invention. The factors include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the

relative skill of those in the art; (6) the predictability of the art; and (7) the breadth of the claims. *Id.*; *see also Amgen, Inc. v. Sanofi*, 987 F.3d 1080, 1087-88 (Fed. Cir. 2021) (finding claims describing LDL cholesterol lowering claims invalid for lack of enablement because a POSA would not have been able to practice the full scope of the claims and undue experimentation is required to do so).

138.    A court is only required to consider those factors relevant to the facts of the case. *See, e.g.*, *Enzo Biochem, Inc. v. Celgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999) ("[A]ll of the factors need not be reviewed when determining whether a disclosure is enabling.").

139.    "Enablement is determined as of the effective filing date of the patent" and "later generated data are irrelevant to the enablement inquiry." *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003). While working examples are not required, the absence of working examples can weigh against a finding of enablement. *See Impax Lab'ys., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1315 (Fed. Cir. 2008).

140.    Claims that depend from independent claims lacking enablement are also invalid. *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1198 (Fed. Cir. 1999).

4.    Indefiniteness

141.    Patent claims are required to "particularly point[] out and distinctly claim[] the subject matter which the [applicant] regards as the invention." 35 U.S.C. § 112(b).

142.    Indefiniteness is a question of law based on underlying facts and factual determinations. *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1225 (Fed. Cir. 2015) (citing *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010) ("Definiteness ... and enablement ... are both questions of law with underlying factual determinations.").

143.    The intended purpose of the definiteness requirement is to provide notice to the public of the bounds of what a patentee considers having claimed, and therefore the boundaries of the associated patent rights. A claim is invalid when a POSA of the invention is unable to, with reasonable certainty, determine the bounds of the claim. See *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012); see also *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938) ("The inventor must inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.") (internal quotation marks omitted)).

144.    The indefiniteness of a claim is measured by whether a POSA at the time of the invention would be informed by the patent's claims, viewed in light of the specification and prosecution history, as to the scope of the invention with reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2128-29 (2014). "Reasonable certainty" does not require absolute or mathematical precision. A POSA must be informed by the claim, in light of the specification and prosecution history, of some "objective boundaries for those of skill in the art" regarding the scope of the invention. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014). "Some modicum of uncertainty ... is the 'price of ensuring the appropriate incentives for innovation.'" *Teva Pharms. USA, Inc. v. Sandoz, Inc*., 789 F.3d 1335, 1341 (Fed. Cir. 2015) (quoting *Nautilus*, 134 S. Ct. at 2124). While some uncertainty is permitted, a patent must still be clear and precise to provide notice to the public of what is claimed, and subsequently what is available to the public. *Id.* Such notice of what is in the public sphere is especially important when the claim can be defined by measurements that can be achieved by multiple routes. *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620,

630 (Fed. Cir. 2015) ("[T]he patent and prosecution history must disclose a single known approach or establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select."); *see also Teva*, 789 F.3d at 1341, 1344-45 (holding a claim indefinite where molecular weight could be measured three different ways and would yield different results and the patent and prosecution history did not provide guidance as to which measure to use).

5.      Failure to Claim What Applicant Regarded as Their Invention

145.      For a claim to be valid and in compliance with 35 U.S.C. § 112(b), the claims must be definite, and must also describe the "subject matter which the [applicant] regards as the invention." 35 U.S.C. § 112(b); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000); *see also Allen Eng'g Corp. v. Bartell Indus.*, *Inc*., 299 F.3d 1336, 1348 (Fed. Cir. 2002) (explaining that § 112 includes two requirements, one for definiteness and one that the inventors claim what they regard as their invention).

146.      A patent claim is invalid under § 112, paragraph 2 "[w]here it would be apparent to one of skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention." *Allen Eng'g Corp.*, 299 F.3d at 1349. Whether a claim recites the subject matter which the applicant regards as his invention is a question of law. See *Solomon*, 216 F.3d at 1377.