IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACADIA PHARMACEUTICALS INC., | |
| *Plaintiff,* | C.A. No. 1:22-cv-01387-GBW |
| | CONSOLIDATED |
| v. | |
| AUROBINDO PHARMA LIMITED, *et al.*, | **PUBLIC VERSION –** |
| | **CONFIDENTIAL MATERIAL OMITTED** |
| *Defendant.* | |

**AUROBINDO PHARMA LIMITED AND
AUROBINDO PHARMA USA, INC.'S
RESPONSIVE POST-TRIAL BRIEF ON NON-INFRINGEMENT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................ 1 | |
| II. | STATEMENT OF THE CASE............................................................................. 2 | |
| III. | LEGAL STANDARDS FOR INFRINGEMENT ................................................ 3 | |
| IV. | AUROBINDO'S ANDA PRODUCT DOES NOT INFRINGE THE ASSERTED CLAIMS ........................................................................................ 5 | |
| | A. | Claim Construction and Interpretation..................................................... 5 |
| | B. | Aurobindo's ANDA Does Not Support Infringement............................... 8 |
| | | i. The Overwhelming Evidence of Aurobindo's ANDA Proves Non-Infringement ......................................................................... 8 |
| | | ii. Aurobindo's ANDA ████████████████████████ ████████████ ................................................................ 9 |
| | | iii. Acadia Cannot Rely on Exaggerated Evidence to Meet its Burden ......... 10 |
| | C. | Testing of Aurobindo's ANDA Product Does Not Support Infringement .............11 |
| V. | CONCLUSION................................................................................................... 15 | |

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    Page(s)

*Alza Corp. v. Andrx Pharms., LLC*,
    607 F. Supp. 2d 614 (D. Del. 2009.) ................................................................................. 4

*Bayer AG v. Elan Pharm. Rsch. Corp.*,
    212 F.3d 1241 (Fed. Cir. 2000.) ................................................................................... 4, 5

*DeMarini Sports, Inc. v. Worth, Inc.*,
    239 F.3d 1314 (Fed. Cir. 2001.) ....................................................................................... 5

*Ferring B.V. v. Watson Labs, Inc.*,
    764 F.3d 1382 (Fed. Cir. 2014.) ................................................................................. 5, 10

*Glaxo, Inc. v. Novopharm, Ltd.*,
    110 F.3d 1562 (Fed. Cir. 1997.) ............................................................................ 4, 5, 10

*In re Brimonidine Patent Litig; Allergan, Inc. v. Exela Pharmsci Inc.*,
    643 F. 3d 1366 (Fed. Cir. 2011) ........................................................................................ 9

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005) ........................................................................................ 5

*Panduit Corp. v. Dennison Mfg. Co., Inc.*,
    836 F.2d 1329 (Fed. Cir. 1987) ........................................................................................ 4

*Par Pharm., Inc. v. Eagle Pharms, Inc.*,
    44 F.4th 1379 (Fed. Cir. 2022) .............................................................................. 5, 9, 10

*Sunovian Pharms., Inc. v. Teva Pharms, USA, Inc.*,
    731 F.3d 1271 (Fed. Cir. 2013.) ............................................................................ 5, 9, 11

*Takeda Pharm. Co. Ltd. v. Teva Pharm. USA*, Inc.,
    668 F.Supp. 2d 614 (D. Del. 2009) ................................................................................... 3

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) ........................................................................................ 3

*Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*,
    887 F.3d 1117 (Fed. Cir. 2018) ........................................................................................ 3

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003.) .................................................................................... 3, 4

*Wavetronix LLC v. EIS Elec. Integrated Sys.*,
    573 F.3d 1343 (Fed. Cir. 2009.) .................................................................................... 4, 5

**Statutes**

35 U.S.C. § 271(e)(2)(A) ...................................................................................................... 3, 4

21 U.S.C. § 505(j) ..................................................................................................................... 3

I.     INTRODUCTION

Defendants Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc. (collectively, "Aurobindo") do not infringe U.S. Patent 11,452,721 ("the '721 patent") in this Hatch-Waxman case brought by Plaintiff Acadia Pharmaceuticals Inc. ("Acadia"). The '721 patent calls for a capsule formulation, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Aurobindo ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Acadia's attempt to nonetheless prove infringement is a failure.

Acadia relies on two arguments to meet its burden of proving infringement, contending that the ANDA ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and relying on an experiment performed on one of Aurobindo's ANDA capsules with magnified pictures ▇▇▇▇▇▇▇ ▇▇▇▇▇. Neither argument comes close to establishing infringement, and in fact both point to non-infringement.

With respect to the ANDA, there is no dispute that Aurobindo describes ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇. There is no dispute that a POSA would understand such a formulation described by Aurobindo's ANDA to be distinct from the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The overwhelming evidence establishes that the manufacturing steps described by Aurobindo's ANDA would ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Faced with this reality, Acadia asks the Court to bind Aurobindo to an exaggerated rendition of the ▇▇▇▇▇▇▇▇ where reference ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Acadia asks the Court to ignore ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1

███. As a whole, Aurobindo's ANDA establishes that its ANDA product is not infringing, and Acadia cannot meet its burden of proving infringement under applicable Federal Circuit law.

Acadia's experiment is even more flawed. Acadia's expert did not ███ ███ ███. Acadia's expert sifted the powder through a series of increasingly smaller sieves and took magnified pictures of ███ which at best showed the pimavanserin ███ ███ ███. Acadia's response to these flaws has been to seek to flip the burden of proof and ignore the massive flaws in its experiment as if they are not Acadia's concern to address. Then, incredibly, Acadia's expert noted the weight of the substantial portion of material too small to be captured by the sieves used to take her magnified pictures, and did not record any observation of ███ ███. In other words, her experiment, if anything, proved that Aurobindo's product *did not* meet the claim limitations of the '721 patent.

Acadia's burden of proving infringement is not met by the scant but exaggerated evidence presented at trial, and Aurobindo is entitled to a judgment of non-infringement.

**II.     STATEMENT OF THE CASE**

As it relates to infringement, this is a single-issue case. The patent in suit is the '721 patent. Acadia asserts claims 4 and 5 of the '721 patent against Aurobindo. (JTX 0009.)

Claim 4 of the '721 patent (JTX 0009-0025) claims:

> A pharmaceutically acceptable capsule for orally delivering 34 mg of pimavanserin to a patient, wherein the capsule has a capsule shell with a capsule shell size 3 or 4, that encapsulates a blended pimavanserin composition comprising: granules comprising 40 mg pimavanserin tartrate and one or more pharmaceutically acceptable

>   excipients; and wherein the bulk density of the granules is >0.4 g/ml as determined by USP<616>, method 1.

Claim 5 of the '721 patent (JTX 0009-0025) claims:

>   The pharmaceutically acceptable capsule of claim 4, wherein the capsule shell is a hard shell size 4 capsule.

Both claims thereby require that Aurobindo's capsule contains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, in order to prevail on any of its infringement claims, Acadia must prove that the capsule proposed to be sold pursuant to Aurobindo's ANDA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## III. LEGAL STANDARDS FOR INFRINGEMENT

The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence and cannot shift this burden to the defendant. *Takeda Pharm. Co. Ltd. v. Teva Pharm. USA*, Inc., 668 F.Supp. 2d 614, 619 (D. Del. 2009); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008); *see also Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1125 (Fed. Cir. 2018) ("The patentee bears the burden of proving infringement by a preponderance of the evidence.").

In the context of pharmaceutical litigation, it is an "artificial" act of infringement under 35 U.S.C. § 271(e)(2)(A) to submit an abbreviated new drug application under Section 505(j) of the Federal Food, Drug, and Cosmetic Act for a drug that is claimed in a patent, to establish jurisdiction before the proposed product is marketed, and therefore enable the resolution of any such disputes. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003). "Once jurisdiction is established, however, the substantive determination whether actual infringement or inducement will take place is determined by traditional patent infringement analysis, just the same as it is in other infringement suits, including those in a non-ANDA context, the only difference being that

the inquiries now are hypothetical because the allegedly infringing product has not yet been marketed." *Id.* "The infringement case is therefore limited to an analysis of whether that the generic drug maker is requesting authorization for in the ANDA would be an act of infringement if performed." *Id.* at 1364.

The infringement inquiry is hypothetical and requires the court to compare the claims with the product described in the ANDA. *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1248-49 (Fed. Cir. 2000). However, a patentee cannot rely solely on the filing of an ANDA under § 271(e)(2)(A) to establish infringement: "[T]he patentee's burden of proving ultimate infringement is not met by the filing of the ANDA." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1570 (Fed. Cir. 1997). The burden of proof does not shift to the ANDA filer merely by the filing of the ANDA. *Id.* ("The relevant inquiry is whether the patentee has proven by a preponderance of the evidence that the alleged infringer will likely market an infringing product."). This analysis, as set forth in *Glaxo, Inc.*, requires proof "by a preponderance of the evidence that the alleged infringer will likely market an infringing product. What is likely to be sold, or preferably, what will be sold, will ultimately determine whether infringement exists." *Id.*

Determining direct infringement requires a two-step inquiry. Step one is to construe the disputed terms of the patent at issue; step two is to compare the accused product with the properly construed claims of the patent. *Alza Corp. v. Andrx Pharms., LLC*, 607 F. Supp. 2d 614, 623 (D. Del. 2009). Step one is a question of law; step two is a question of fact. *Id.*; *see also Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009).

"Literal infringement occurs when each element of at least one claim of the patent is found in the alleged infringer's product." *Alza*, 607 F. Supp. 2d at 623 (*citing Panduit Corp. v. Dennison Mfg. Co., Inc.*, 836 F.2d 1329, 1330 (Fed. Cir. 1987)); *see also DeMarini Sports, Inc. v. Worth, Inc.*,

4

239 F.3d 1314, 1331 (Fed. Cir. 2001). "If, however, even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005); *see also Bayer*, 212 F.3d at 1247 ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."); *Glaxo, Inc.*, 110 F.3d at 1566 ("It is elementary patent law that all limitations are material[,]" and plaintiffs are "required to establish the presence of each limitation of the asserted claims."). Similarly, if there is any deviation from any claim limitation, there can be no literal infringement as a matter of law. *See, e.g.*, *DeMarini Sports*, 239 F.3d at 1331; *Wavetronix*, 573 F.3d at 1359.

In assessing whether a Hatch-Waxman plaintiff has met its burden of proving infringement in ANDA cases, the Federal Circuit described two pathways in *Ferring B.V. v. Watson Labs, Inc.*, 764 F.3d 1382, 1387-8 (Fed. Cir. 2014). First, if the ANDA "clearly describes a product that meets the limitations of the asserted claims," then the infringement issue can be decided as in *Sunovian Pharms., Inc. v. Teva Pharms, USA, Inc.*, 731 F.3d 1271 (Fed. Cir. 2013). In those instances, with a clear answer to the infringement question, the ANDA is binding and no further proof is required. *Id.* at 1279. But, if "the ANDA specification does not speak clearly and directly to the question of infringement," then a *Glaxo*-type analysis is required and evidence such as data or samples of the ANDA product is required to assess whether a proposed product will infringe. *Par Pharm., Inc. v. Eagle Pharms, Inc.*, 44 F.4th 1379, 1383-4 (Fed. Cir. 2022); *Ferring*, at 1388.

### IV. AUROBINDO'S ANDA PRODUCT DOES NOT INFRINGE THE ASSERTED CLAIMS

#### A. Claim Construction and Interpretation

In addressing the issue of whether claim 4 requires pimavanserin be ▮▮▮▮▮▮▮▮, the Court construed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as follows: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

███████████ (D.I. 44 at 5 – 6.) Accordingly, although there are clues given in this statement, as well as in the patent specification, in fact no specific construction of ██████ was given, leaving the meaning to plain and ordinary as understood by a POSA.

The Court also held that the claims at issue are not product-by-process claims and do not involve any process limitations. (D.I. 112 at 20-22.) Aurobindo does not contend there are process limitations in the claims at issue, but instead, Aurobindo's process of manufacturing its proposed capsule is relevant to a determination of ████████████████████████████████████████ ████████████████████ (6:4-22[1].) Just because the patent leaves open the specific method of ████████████, does not mean the process of capsule formulation is not relevant. Instead, it is critical, in order to make a determination of what a POSA would understand regarding Aurobindo's ANDA product, and whether Acadia could meet its burden of proving infringement based on the sparse evidence presented.

The patent specification does not define ████████, but it does define ████████ as follows: ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████ (JTX 0009- 0014, Col. 4, ll. 43-49.) On this point, Acadia misrepresents Aurobindo's expert Dr. Moreton suggesting he testified that a looser adherence was sufficient ████████████. See D.I. 129, p.6 of Acadia's trial brief (herein, "Acadia Br".) In fact, Dr. Moreton just finished a sentence wherein he testified that there has ████████████████████████ (225:23-25.) This is

---

[1] This citation format throughout this brief is meant to indicate portions of the Trial Transcript, page number followed by line number.

of course consistent with the specification which requires that the [REDACTED]. (JTX 0009- 0014, Col. 4, ll. 45-46.)

 Both parties' experts define [REDACTED] in terms of a type of agglomeration. Dr. Smith, for Acadia, refers to undesired, unintended agglomeration as clumping and [REDACTED] (121:15 – 122:11.) Dr. Moreton for Aurobindo distinguishes loose agglomeration as being clumping of powder, whereas [REDACTED] (187:25 – 188:15.) Dr. Moreton agrees with Dr. Smith that [REDACTED]. (188:22-23; *see also* Defendants' expert Dr. Muzzio in agreement with this and a POSA's understanding [REDACTED] at 240:13-17.) This intentional action component of a POSA's understanding of [REDACTED] is consistent with the Court's explanation that [REDACTED] and the specification which requires [REDACTED] (D.I. 44 at 6; JTX 00009-0014; *see also* 193: 12-22.) On this point, Acadia references a comment by the Court denying Aurobindo's motion for judgment as a matter of law, which of course involves a different burden and inferences favoring the non-movant. (*See* Acadia Br. at p. 6.) Likewise, Acadia's reference in its post-trial brief to inapplicable case law pertaining to whether intent to infringe must be proven in a direct infringement case does not answer the intent question embedded in a POSA's understanding of [REDACTED]. The issue is not intent to infringe but an understanding that the formation of the material into [REDACTED]. Such is the understanding of the plain and ordinary meaning of [REDACTED], which is the Court's construction, and both parties' experts agree.

Not only must there be ███████ as understood by a POSA in the accused capsule product, the quantity of pimavanserin tartrate required to be found ████████ is a limitation of both claims 4 and 5. (JTX 0009-0025.) Under the plain claim language, there must be ███████ ████████████████████████████████ (JTX 0009-0025.) Because Aurobindo's ANDA capsule contains █████████████████████ (DTX 347-0002), it is insufficient for Acadia to claim ████████████████████████████████████ ████████████████████████████████████.

### B.  Aurobindo's ANDA Does Not Support Infringement

#### i.  The Overwhelming Evidence of Aurobindo's ANDA Proves Non-Infringement

A POSA reading Aurobindo's ANDA would understand it describes ███████ █████████████. Aurobindo's ANDA capsule ██████████████████████. (DTX 347-0003-4; DTX 320-0004-5; 141:18-25; 197: 4-11; 203:9 – 204:8.) No granulation step is involved in Aurobindo's dry blending process. (142:1-7.) Aurobindo's ANDA capsule contains ████████████████████████. (196:18-21.) A POSA would understand ████████████████████████████████████████████████████████████████████████████████████████████████████. (191: 15-20; 244:23-245:12; 298:24-300:22; DTX 329.) A POSA would understand Aurobindo's ANDA to be describing ████████████████████████. (201:8 – 202:15.) ████████████████████████████████████████████████████████████████ (DTX 320-0004-5; DTX 347-0003-4; 206:20 – 207:19.) Aurobindo's ██████████ ████████████████ which even Acadia's expert Dr. Smith agrees, ████████ ████████████████ (131:16-23; *see also* Dr. Moreton's testimony in accord at 182:4-8,

8

189:1-4 and 207:15-19.) [REDACTED]

[REDACTED] (186:2-187:12; 206:20 – 207:7.) *See also* Acadia's validity expert Dr. Little in accord – [REDACTED] (584:20 – 585:3.)

Acadia attempts to address this issue in its trial brief, but ultimately equates Dr. Smith's experiment (addressed below) as the basis for contesting the simple truth that [REDACTED] (*See* Acadia Br. at p. 13.) At bottom, the evidence from all of the experts is in accord – [REDACTED]. (Citations throughout this sub-section). Accordingly, a POSA would conclude that Aurobindo's ANDA [REDACTED]. (*Id.*)

      ii.    **Aurobindo's ANDA Contains No Statement That [REDACTED]**

Aurobindo did not perform any polarized light microscopy testing on its ANDA capsule. (170:7-16.) Aurobindo did not report to FDA any analysis of whether Aurobindo's ANDA capsule [REDACTED]. (DTX 320; DTX 347.) Aurobindo's ANDA [REDACTED]

Accordingly, this is not the type of ANDA that "directly resolves the infringement question" as required by *Par*, 44 F.4th at 1382 (with a specific restriction of a particular pH range); *Sunovian*, 731 F.3d at 1278 (with a specification of a particular purity range); or *In re Brimonidine Patent Litig; Allergan, Inc. v. Exela Pharmsci Inc.*, 643 F. 3d 1366, 1378 (Fed. Cir. 2011) (also with a



specific restriction of a particular pH range). Instead, the infringement inquiry here requires an assessment of Aurobindo's ANDA product likely to be sold, as in the *Glaxo*-type situation. *Par*, at 1383-4; *Ferring*, at 1388.

### iii. Acadia Cannot Rely on Exaggerated Evidence to Meet its Burden

Aurobindo's ███████████████████████████████████████

███████████████████████████████ (DTX 347; DTX 348; and DTX 349.) Any inadvertent reference to ███████████████████████████████████████

█████████ (*Compare* JTX 134, JTX 108 and JTX 109 with DTX 347, DTX 348 and DTX 349.)

███████████████████████████████████████████████ section of Aurobindo's ANDA, which both parties' experts referenced in forming their opinions contains █

███████████████████████. (DTX 320.) This document, along with the █████████

███████████████████████████████████████████████

███████████████████████████████████ (DTX 320; DTX 347.)

Acadia downplays these problematic truths and instead points to a different section in the ███████████████████████████ of the ANDA where there were █████████████████. (JTX0125.) These █████████ are exaggerated in Acadia's briefing by a sleight of hand, wherein the ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████, either because they were deliberately

10

removed or because there was no linkage to the two sections. (*See* Acadia Br. at pp. 7 – 10.[2]) If anything, the final version of the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Acadia's overreliance on the ████████████████████████ simply does not match the situations presented in *Sunovian* and related cases, and thus cannot excuse Acadia from proving that Aurobindo's product actually infringes the '721 patent. A POSA and FDA would understand that Aurobindo's product to be sold █████████████████████████████████████████████████████████████. (196:18-21; 201:8 – 202:15; DTX 320 and DTX 347.) And in no way does the ANDA describe that all of the pimavanserin tartrate in its product ████████████████, as it has to be to meet the quantity limitation.

C. **Testing of Aurobindo's ANDA Product Does Not Support Infringement**

Acadia's expert used stereo microscopy and polarized light microscopy to show slides of some of the ████████████████████████████ captured by a series of sieves. (82: 12-15.) This testing does not show how the pimavanserin tartrate ████████████████████████████████████████████████████ caught by the various sieve diameters ████████████████████ (120:23 – 121:14; 217:24 – 219:19.)

Dr. Smith's experiments used the material from an Aurobindo capsule sample, which was opened and then subjected to a sieving process, the data of which was reported in duplicate in the notebooks for both the stereo microscopy and polarized light microscopy experiments as follows:

---

[2] Curiously, Acadia also has an entire section in its post-trial brief dedicated to addressing an alleged argument by Aurobindo's fact witness that the reference to ████████████████████████████████████████████████████████████████████████ But there was no such testimony. (*See* Acadia Br. at p. 10.)

11



(JTX 0062-003; JTX 0061-003.)

A total of eight sieves were used, with increasingly smaller mesh sizes such that the contents of Aurobindo's capsule would pass through or be captured by the meshes from top to bottom. (116:13 – 117:1.) The right-hand column of the table represents the percentage by weight retained by each sieve, as well as the percentage by weight which passed through all eight (8) sieves and onto the collection pan. (JTX 0062-003; JTX 0061-003; 117:2-17.) The smallest mesh sieve is 1/16 the size of the largest. (JTX 0062-003; JTX 0061-003.)

In addition to there being an array of increasingly smaller mesh that captured various quantities from the Aurobindo ANDA pill, 12.4% of the total weight of the pill made it through all eight (8) sieves and were collected in a pan at the bottom. (119:4-8.) Additionally, 10.52% of the Aurobindo ANDA pill is unaccounted for entirely in the experiment as the total weight collected in a sieve or in the bottom pan was 89.48%. (119:9-16.) Thus, the total quantity of the Aurobindo ANDA pill that was either not captured by a sieve or was lost to any possible analysis in the experiment was 22.92% of the total contents of the Aurobindo ANDA capsule.

The big picture of a clump in the stereo microscopy experiment was captured by the first sieve, which accounted for only 12% of the total quantity of the contents of the Aurobindo ANDA capsule. (JTX 62-005.) The pictures of material, alleged by Dr. Smith to be pimavanserin tartrate and MCC, shown to be touching each other with no information on how they are bonded, captured by polarized light microscopy principally came from the fourth sieve, which in accumulated percentage accounted for 22.96% of the total quantity of the contents of the Aurobindo ANDA capsule. (JTX 61-0006 – 0020.)

There is no record of any observation (microscopic or otherwise), data or pictures from the material collected by the smallest sieve, the material that passed through all of the sieves, or was lost and unaccounted for. The total amount of material with no record of any observation of any kind was 39.42% of the total capsule, of which at least 28.9% was smaller than any observed material. (JTX 0062-003; JTX 0061-003.)

Dr. Smith admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (124:13 – 125:8.) In working with pimavanserin tartrate, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (DTX 320-0005; DTX347-003), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The result would be to change the capsule fill ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (216:4-21.) Pimavanserin was known to have a tendency to form clumps. (299:11-13; *see also* Acadia's invalidity expert agreeing at 481:7; 482:20-22 and 533:22-24.) Instead of addressing this significant flaw in Dr. Smith's testing of Aurobindo's ANDA product, Acadia simply attempts to flip its burden of proof onto Aurobindo, suggesting that Aurobindo bears the burden of proving that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Acadia Br. at p. 14.) Given the

13

known characteristic of pimavanserin tartrate to be "bad behaving," as described by Acadia's own invalidity expert, and Aurobindo's ■■■ Dr. Smith's own failure to conduct her experiment with the same level of control is inexcusable and her "testing" of Aurobindo's capsule product is flawed.

Without information regarding how the materials alleged to be in ■■■ and with the lack of experimental control of a critical factor in handling pimavanserin tartrate (one which Aurobindo ■■■), Dr. Smith's experiments do not establish ■■■ in Aurobindo's ANDA product.

Even if some of the agglomerates depicted in Dr. Smith's experiments were ■■■ Dr. Smith concedes conducting no tests to prove that all of the pimavanserin tartrate ■■■ (133:5-15.) Acadia attempts to characterize her testimony as demonstrating "complete confidence" ■■■ (*See* Acadia Br. at p. 12.) Not only did she not use those words at trial, the notion that she could credibly claim the 39.42% of material that was either lost in the experiment, or smaller than any observed material was ■■■ based on unmagnified observation is scientific bunk and can be rejected out of hand. The evidence before the Court establishes no basis for a determination that ■■■, and Acadia simply fails to meet its burden of proof on this issue. The 39.42% of material from Aurobindo's ANDA product for which Dr. Smith obtained no information about is more than sufficient to prevent her experiment from establishing that the Aurobindo ANDA product meets

14

the claim limitation which requires █████████████████████████████████. This is especially true considering the 39.42% unobserved and unrecorded material represent the ████ ██████, whereas ████████████████████████████████████ (JTX 0009-0014, Col. 4, ll. 43-49.) If anything, Dr. Smith proved non-infringement by proving that Aurobindo's capsule did not consistently contain ████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████.

## V. CONCLUSION

Acadia has failed to meet its burden of proving that Aurobindo's ANDA product infringes either claim 4 or 5 of the '721 patent because it has not shown that the product likely to be sold under Aurobindo's ANDA ████████████████. The preponderance of the evidence establishes that Aurobindo's ANDA product as described by the ANDA and physically examined by Acadia's expert ████████████████████████████████████████████████ ████████████████, as defined by the Court and understood by a POSA.

Acadia has failed to meet its burden of proving that Aurobindo's ANDA product infringes either claim 4 or 5 of the '721 patent because it has not shown that the product likely to be sold under Aurobindo's ANDA ████████████████████████████████████████. The preponderance of the evidence establishes that Aurobindo's ANDA product as described by the ANDA and physically examined by Acadia's expert ████████████████████████ ██████████████████████████ required as specifically shown by Acadia's expert wherein a significant percentage of Aurobindo's product was not shown to observed ████████ ████████████████████████████████████.

15

| | |
|---|---|
| Dated: February 12, 2025 | **KRATZ & BARRY LLP** |
| | */s/ R Touhey Myer*<br>R Touhey Myer (#5939)<br>800 N. West Street<br>Wilmington, DE 19801<br>(302) 527-9378<br>tmyer@kratzandbarry.com |

*Of Counsel:*

Timothy H. Kratz *(Pro Hac Vice)*
George J. Barry III *(Pro Hac Vice)*
John Thallemer *(Pro Hac Vice)*
KRATZ & BARRY LLP
1050 Crown Pointe Parkway, Suite 500
Atlanta, GA 30338
(404) 431-6600
tkratz@kratzandbarry.com
gbarry@kratzandbarry.com
jthallemer@kratzandbarry.com

Michael P. Hogan *(Pro Hac Vice)*
KRATZ & BARRY LLP
622 South 4th Street
P.O. Box 63765
Philadelphia, PA 19147
(917) 216-8585
mhogan@kratzandbarry.com

*Attorneys for Defendants,*
*Aurobindo Pharma Ltd. and*
*Aurobindo Pharma USA, Inc.*