# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACADIA PHARMACEUTICALS INC., <br><br> Plaintiffs, <br><br> v. <br><br> AUROBINDO PHARMA LIMITED, et al., <br><br> Defendants. | C.A. No. 1:22-cv-01387 <br> (Consolidated, Lead Case) |

**DEFENDANT MSN'S REPLY POST-TRIAL BRIEF**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1

II.  PLAINTIFF PRESENTED NEW ARGUMENTS ON OBVIOUSNESS, BUT STILL
     FAILS TO REBUT THE DEFENDANTS' STRONG SHOWING THAT THE
     CLAIMS ARE OBVIOUS ................................................................................................. 1

     A.   Plaintiff attempts to mislead the Court regarding whether a POSA would
          have been motivated to choose a size 4 capsule dosage form containing the
          full 34 mg daily dose of pimavanserin..................................................................... 1

     B.   Plaintiff cites case law as if the facts were the same here, but cannot
          overcome that the prior art provided a POSA with a reasonable
          expectation of success to achieve the Asserted Claims. ......................................... 3

III. PLAINTIFF MISCONSTRUES THE PATENT, BUT STILL FAILS TO PROVE
     THE ASSERTED CLAIMS ARE NOT INVALID UNDER 35 U.S.C. § 112. .................. 4

IV.  CONCLUSION ................................................................................................................... 4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adapt Pharma Operations Ltd. v. Teva Pharma's USA, Inc.*,
   25 F.4th 1354 (Fed. Cir. 2022) ................................................................................................2

*In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*,
   676 F.3d 1063 (Fed. Cir. 2012)................................................................................................3

*In re Samuels*,
   No. 2021-2166, 2024 WL 960453 (Fed. Cir. Mar. 6, 2024).....................................................3

**Statutes**

35 U.S.C. § 112................................................................................................................................4

# TABLE OF ABBREVIATIONS

Unless otherwise stated, the abbreviations below have the meanings ascribed to them in the right-hand column throughout this brief.

| ABBREVIATION | MEANING |
|---|---|
| The '721 patent | U.S. Patent No. 11,452,721 (JTX9) |
| API | Active pharmaceutical ingredient |
| Pl. FOF | Plaintiff's Post-Trial Findings of Fact |
| POSA | Person of ordinary skill in the art |
| Tr. | Trial Transcript |

i

I.      **INTRODUCTION**

Plaintiff's responsive brief misstates several key facts, misconstrues the prior art, and shoehorns in statements from caselaw masquerading as facts. The Court should reject Plaintiff's blatant attempt to relitigate the record, and find the asserted claims of the '721 patent invalid.

II.     **PLAINTIFF PRESENTED NEW ARGUMENTS ON OBVIOUSNESS, BUT STILL FAILS TO REBUT THE DEFENDANTS' STRONG SHOWING THAT THE CLAIMS ARE OBVIOUS**

A.      **Plaintiff attempts to mislead the Court regarding whether a POSA would have been motivated to choose a size 4 capsule dosage form containing the full 34 mg daily dose of pimavanserin.**

Plaintiff attempts to mislead the Court as to the contents of the record and several of the prior art references. For instance, Plaintiff asserts that "Dr. Little did not admit that a POSA would have understood administering pimavanserin as a single pill to be an advantage worth pursuing[.]" Resp. Br. at 4, n. 1. But Dr. Little admitted that Parkinson's disease patients are at risk of non-compliance with their therapy because they have difficulty swallowing, and agreed that "a POSA would understand that [administering pimavanserin as a single dose] is something you could do" to simplify administration and patient compliance. Tr. 570:19–25; 572:12–19. Thus, these motivations existed in the art and compel a finding of obviousness.

Plaintiff argues that several of the prior art references "teach away" from capsules. Resp. Br. at 4–7. For example, Plaintiff asserts that the Liu reference (DTX-013) "discouraged the use of capsules unless other dosage forms were not acceptable." Resp. Br. at 4. But Liu *never* discourages the use of capsules in favor of liquids or flexible solid dosage forms. Rather, Liu teaches that flexible oral solid forms are "alternatives to *liquid medicines* . . . where *liquid medicines* are not acceptable to patients." DTX-013_011. That statement does not discourage use of capsules; rather, it identifies flexible solids as an alternative when other options have failed.

Plaintiff also argues the Schiele reference (DTX-007) teaches away from capsules because

1

"Schiele explicitly teaches both larger dosage forms and capsules cause more swallowing difficulties." Resp. Br. at 6. Again, Plaintiff misconstrues the reference. Schiele discloses that *some* capsules—approximately 21% in one study—caused swallowing difficulties (*see* DTX-007_0005 at FIG. 3), but the remaining 79% *did not. See id.* Further, Schiele identifies capsules that *do not* cause swallowing difficulties by their size, and specifically guides a POSA towards smaller capsules. DTX-007_0005–6. Thus, Schiele does not "teach away" from capsules in general—just *large* capsules. *See Adapt Pharma Operations Ltd. v. Teva Pharma's USA, Inc.*, 25 F.4th 1354, 1370 (Fed. Cir. 2022) (reference that taught away from using high concentrations of excipient did not teach away from using the same excipient altogether). Dr. Muzzio testified that a POSA would recognize from Schiele's disclosures that a size 4 capsule would be a good option, as it would not cause swallowing difficulty—testimony Dr. Little did not rebut. Tr. 329:8–330:20. And Dr. Little granted the common-sense point of Schiele: that *smaller capsules are easier to swallow*. Tr. 576:9–13.

Lastly, Plaintiff asserts that Ragnar-Tolf (JTX-011) teaches a POSA towards "direct compression tablet formulations, not capsules." Resp. Br. at 6. But the *opposite* is true: the direct compression blends disclosed in Example 8 of Ragnar-Tolf formed aggregates, and such blends "ha[ve] a high risk of content uniformity failure." Tr. 298:21–300:15.[1] Plaintiff alleges that Dr. Muzzio admitted Ragnar-Tolf "taught that … formulating [pimavanserin] with a gelatin or HPMC capsule may be problematic." Pl. FOF ¶ 20 (citing Tr. 417:18–418:14). But Dr. Muzzio testified that "two or three paragraphs later, [Ragnar-Tolf] actually says [capsules] were fine." Tr. 418:10–

---

[1] Plaintiff selectively quotes Stegemann 2002 (DTX-005)—a reference Dr. Little never discussed in his testimony—as disclosing that "adhesion of many drug actives or excipients *might* lead to difficulties during capsule filling" (Resp. Br. at 6), but fails to note Stegemann's solution that "[g]ranulation usually leads to an improvement in product flow." DTX-005_0010.

2

14; *see also* JTX-0009_0018 (paragraph [0123]). Ragnar-Tolf hardly would have dissuaded a POSA from capsules.

> **B.    Plaintiff cites case law as if the facts were the same here, but cannot overcome that the prior art provided a POSA with a reasonable expectation of success to achieve the Asserted Claims.**

Lacking actual facts to bolster their argument, Plaintiff resorts to quoting caselaw as if it was evidence in this case. For example, quoting a case from 2012, Plaintiff argues that a "plain reading of the testimony, however, indicates that Dr. [Muzzio] never expressed even an expectation of success[.]" Resp. Br. at 9 (quoting *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1073-74 (Fed. Cir. 2012) ("*CBP*")). But a caselaw quote is not evidence. Dr. Muzzio *explicitly testified* that a POSA would have had such an expectation. Tr. 335:15–336:15.[2] More egregiously, Plaintiff quotes from another case that "the record shows that the claimed amount[] of [pimavanserin tartrate] could and did materially and unpredictably alter the property of the claimed formulation" (Resp. Br. at 9 (quoting *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1305 (Fed Cir. 2015)). But the *actual* evidence points in the opposite direction: Dr. Muzzio testified that Ragnar-Tolf taught a POSA that "you can achieve densities—bulk densities, you know, around 0.6 with fairly good consistency" where the pimavanserin concentration varied from about 1 percent to about 20 percent. Tr. 332:13–19. Dr. Little never rebutted this testimony.

Plaintiff again quotes from the *CBP* case to assert, "[ACADIA's] failure to develop a single size 4 capsule formulation suggests that skilled artisans would not have reasonably expected to succeed" and that "'the long delay between the marketing of the [two tablet] formulation and [the

---

[2] By contrast, all Dr. Little did is raise the *possibility* that increasing the pimavanserin concentration would decrease the bulk density, without pointing to anything. *See* Tr. 542:9–543:23. "Such a mere possibility of failure, in this context, does not mean that there is no reasonable expectation of success." *In re Samuels*, No. 2021-2166, 2024 WL 960453, at *2 (Fed. Cir. Mar. 6, 2024) (nonprecedential).

3

one capsule formulation] . . . supports the inference that it was difficult for researchers to create a [single size 4 capsule] product." Resp. Br. at 9 (quoting *CBP*, 676 F.3d at 1083). But nobody testified as to this alleged "fact." And, once again, the *actual* evidence points in the opposite direction. Once ACADIA's contractor, Catalent, tried to fit 40 mg pimavanserin tartrate in a size 4 capsule, they succeeded. *See* JTX-0009-0020 ('721 patent, 13:29–14:43, disclosing all the comparative experiments had acceptable bulk density to fill a size 4 capsule); Tr. 265:13–19. And there was no "long delay" between Nuplazid tablets and capsules. The tablets were approved in April 2016, while the priority date of the '721 patent is a mere 16 months later. Tr. 290:4-14; JTX-12-0001. This simply underscores how obvious the claimed subject matter is. Plaintiff's attempt to mask caselaw as evidence should be rejected.

### III.   **PLAINTIFF MISCONSTRUES THE '721 PATENT, BUT STILL FAILS TO PROVE THE ASSERTED CLAIMS ARE NOT INVALID UNDER 35 U.S.C. § 112.**

Plaintiff also misconstrues the '721 patent to argue for written description of the full scope of "pharmaceutically acceptable excipients." Resp. Br. at 13. Without any testimonial support, Plaintiff points to column 19 of the specification as containing "express disclosures for manufacturing processes for granules" that note that various excipients may be included. *See* Resp. Br. at 13 (citing JTX09 at 19:12–15). But even a cursory reading makes it clear that the excipients are added to pimavanserin *after* it has been granulated by itself. *See, e.g.*, JTX09 at 18:44–19:11 (disclosing "granulating the pimavanserin and the water," and "sizing the dried pimavanserin granulation," followed by "blending the sized pimavanserin granulation with one or more filler/diluent"). Plaintiff's grasp at new portions of the specification to provide written description support for their overbroad claims should be rejected.

### IV.   **CONCLUSION**

For the foregoing reasons, the Court should hold claims 4 and 5 of the '721 patent invalid.

| | |
|---|---|
| DATED: March 18, 2025 | SEITZ, VAN OGTROP & GREEN. P.A. |
| *Of Counsel:* | /s/ DRAFT<br>James S. Green, Jr. (#4406) |
| Richard J. Berman<br>Janine A. Carlan<br>Bradford C. Frese<br>Michael Baldwin<br>ARENTFOX SCHIFF LLP<br>1717 K Street, NW<br>Washington, DC  20006<br>(202) 857-6000<br>richard.berman@afslaw.com<br>janine.carlan@afslaw.com<br>bradford.frese@afslaw.com<br>michael.baldwin@afslaw.com | 222 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>(302) 888-7607<br>jsgreen@svglaw.com<br><br>*Counsel for Defendants,*<br>*MSN Laboratories Private. Ltd. and*<br>*MSN Pharmaceuticals, Inc.* |

5